## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JOHN DOE,

Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.

Defendant

Case No. 6:20-cv-01220-WWB-LRH

Judge:  BERGER

RESPONSE TO MOTION TO
DISMISS


Plaintiff John Doe respectfully submit this Response to the Motion to Dismiss by Defendant

Embry-Riddle Aeronautical University, Inc.  (Doc#56.)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 2

    A.    The ERAU Sexual Misconduct Policy .................................................................. 2

         1.    Background ................................................................................................ 2

         2.    The ERAU Sexual Misconduct Policy ..................................................... 3

    B.    The Allegations Against John Doe .......................................................................... 5

ARGUMENT ..................................................................................................................... 8

    A.    Standard .................................................................................................................. 8

    B.    Plaintiff Is Not Stating A Title IX Erroneous Outcome Claim ............................. 8

    C.    Plaintiff Has Stated A Valid Title IX Selective Enforcement Claim ...................... 9

         1.    Standard ..................................................................................................... 9

         2.    The Allegations Of The Complaint Sufficiently Support A Title Ix Selective Enforcement Claim .................................................................... 9

    D.    Plaintiff Has Stated A Valid Claim For Breach Of Contract ............................... 14

         1.    Standard ................................................................................................... 14

         2.    The Allegations Of The Complaint Sufficiently Support A Breach Of Contract Claim ........................................................................................ 15

             a.    The Conduct Occurred Off Campus ........................................... 15

             b.    ERAU Did Not Provide A Fair Process ...................................... 16

    E.    Defendant's Motion Directed To The Form Of Relief Fails ............................... 18

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Ali v. Stetson Univ., Inc.*, 340 F.Supp.2d 1320 (M.D. Fla. 2004) ........................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................8

*Baker v. Batmasian,* 730 F.App'x 776 (11th Cir. 2018) ............................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................8

*Cordell Funding, LLLP v. Jenkins*, 722 F. App'x 890, (11th Cir. 2018) ...................... 15

*Doe v. Amherst College*, 238 F.Supp.3d 195 (D.Mass. 2017) ....................... 8, 11, 12, 18

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) ............................................................................ 14

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D.Mass.2016) ..................................................8

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016) ................................................... 2, 20

*Doe v. Brown Univ.*, 327 F. Supp. 3d 397 (D.R.I. 2018) ..................................................... 12

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir.) ...................................................................... 14

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) ....................................................... 9, 19

*Doe v. Lynn Univ., Inc.,* 235 F. Supp. 3d 1336 (S.D. Fla. 2017) ...................................... 8, 9

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) ......................................................... 10, 13

*Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881 (S.D.Ohio 2018) ...........................................3

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) ............................................................. 14

*Doe v. Rollins College*, 352 F. Supp. 3d 1205 (M.D.Fla. 2019) ................................. *passim*

*Doe v. Syracuse Univ.*, N.D.N.Y. No. 5:17-cv-787 (TJM/ATB), 2020 U.S. Dist. LEXIS
75995 (Apr. 30, 2020) ........................................................................................................... 12

*Doe v. Syracuse Univ.*, N.D.N.Y. No. 5:17-cv-787, 2020 U.S. Dist. LEXIS 75995 (Apr. 30,
2020) .......................................................................................................................................... 10

*Doe v. Trustees of Boston College* et al, D. Mass. No. 1:15-cv-10790 (Docket Entry #200, May
14, 2020) ................................................................................................................................... 20

*Doe v. Trustees of Boston College*, 892 F.3d 67 (1st Cir. 2018) ...................................... 17

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) ................................................. 19

*Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821 (E.D.Mich. 2018) ................................. 19

*Doe v. Univ. of S. Alabama*, S.D.Ala. No. 17-0394, 2020 U.S. Dist. LEXIS 25961 (Feb. 14,
2020) ............................................................................................................................................9

*Doe v. Univ. of the Sciences,* 961 F.3d 203 (3d Cir. 2020) ....................... 10, 11, 14, 16

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) ...................................9

*Doe v. Visitors of George Mason*, 179 F. Supp. 3d 583 (E.D. Va. 2016) ....................................... 19

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2007) ........................................................................... 18

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) .................................................. 18

*Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6 (D. Me. 2005) ..................................................... 2

*Gordon v. Jenne*, S.D.Fla. No. 06-60766, 2006 U.S. Dist. LEXIS 110234 (Oct. 30, 2006) ...................... 18

*Goss v. Lopez*, 419 U.S. 565 (1975) ................................................................................................... 16

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ................................................................ 11

*Grove City College v. Bell*, 687 F.2d 684 (3rd Cir. 1982) ................................................................. 19

*Haney v. W. Chester Univ.*, E.D.Pa. No. 18-02456, 2018 U.S. Dist. LEXIS 138639 (Aug. 16, 2018) .................................................................................................................................................. 19

*Ibis Lakes Homeowners Assn. v. Ibis Isle Homeowners Assn.*, 102 So.3d 722 (Fla.App. 2012) ..................... 16

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352 (11th Cir. 2011) ............................. 8

*Jarzynka v. St. Thomas Univ. School of Law*, 310 F.Supp.2d 1256 (S.D.Fla. 2004) ..................................... 15

*Jia v. Univ. of Miami*, S.D.Fla. No. 17-cv-20018, 2019 U.S. Dist. LEXIS 23587 (Feb. 12, 2019) .................................................................................................................................................. 9

*Joglo Realties, Inc. v. Seggos*, E.D.N.Y. No. 16-CV-1666, 2016 U.S. Dist. LEXIS 113057 (Aug. 23, 2016) .................................................................................................................................................. 11

*John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 102 So. 637 (1924) ....................................................... 15

*Mallory v. Ohio Univ.*, 76 F. App'x 634 (6th Cir. 2003). ..................................................................... 9

*Mancini v. Rollins College*, M.D.Fla. No. 6:16-cv-2232, 2017 U.S. Dist. LEXIS 113160 (July 20, 2017) .............................................................................................................................................. 8, 17

*Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337 (11th Cir. 2005.) ....................................... 5

*Mujaahida Mali Rasheedah Bint Duffy v. Bates*, N.D.Fla. No. 1:15-cv-37, 2015 U.S. Dist. LEXIS 36712 (Mar. 16, 2015) ........................................................................................................... 11

*Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887 (Mar. 31, 2017) .................................................................................................................................. 8

*Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, M.D.Fla. No. 6:19-cv-196-Orl-31DCI, 2019 U.S. Dist. LEXIS 103796 (June 21, 2019) ........................................................................................ 18

*Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017) ............................................................. 12

*Pratt v. Rowland*, 769 F.Supp. 1128 (N.D.Cal. 1991) ....................................................................... 18

*Raines v. Palm Beach Leisureville Cmty. Ass'n*, 317 So. 2d 814 (Fla.App. 1975) ........................... 16

*Ritter v. Oklahoma*, W.D.Okla. No. CIV-16-043 8, 2016 U.S. Dist. LEXIS 60193 (May 6, 2016) .................................................................................................................................................. 19

*Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017) ...................... 13

*Rossley v. Drake Univ.*, 342 F. Supp. 3d 904 (S.D. Iowa 2018). ................................................. 10, 12

*Savino v. Town of Southeast*, 983 F.Supp.2d 293 (S.D.N.Y.2013) ................................................. 11

*Sharick v. Southeastern University of Health Science*s, Inc., 780 So.2d 136 (Fla. 3rd DCA 2000)................ 15

*United States v. Griffin*, 84 F.3d 912 (7th Cir. 1996)......................................................................1

*Univ. of Miami v. Militana*, 184 So.2d 701 (Fla. 3d DCA 1966) .................................................. 15

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ...................................................... 15

*Villard v. Capella Univ.*, M.D.Fla. No. 6:17-cv-1429, 2017 U.S. Dist. LEXIS 220541 (Dec.
    21, 2017) ....................................................................................................................................... 15

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009). ...................................................5

*Woods v. Florence*, N.D.Ala. No. CV82-PT-2272-S, 1985 U.S. Dist. LEXIS 23929 (Apr. 29,
    1985) .............................................................................................................................................. 18

*Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015) ...............................................................2

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ..........................................................2, 9, 14

## OTHER AUTHORITIES

Joe Dryden et. al., *Title IX Violations Arising from Title IX Investigations:  The Snake Is Eating Its
    Own Tail*, 53 Idaho L. Rev. 639 (2017)...................................................................................3

Letter from Office for Civil Rights, U.S. Dep't of Educ. (April 11, 2011) .................................2

Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017) ......................3

J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice para. 12.07[2.-5] (2d ed. 1991) ............ 18

Open Letter From Members Of The Penn Law School Faculty:  *Sexual Assault Complaints:
    Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015..........................3

*Rethink Harvard's Sexual Harassment Policy*, Boston Globe (Oct. 15, 2014) .................................3

## INTRODUCTION

One thing is clear: ERAU certainly believes that Plaintiff is 'guilty' of sexual misconduct. The school essentially proves Plaintiff's case – that ERAU had pre-determined the outcome of his disciplinary process[1] – when it audaciously describes Plaintiff as a "predator who admitted that he lured in an inexperienced freshman student and raped her." Def. Memo. at PageID#348. ERAU then proceeds to spend multiple pages describing alleged misconduct by Plaintiff while ignoring the misconduct by its own staff and faculty.[2] The facts of the Complaint, which must be taken as true for purposes of this Motion, are that the conclusion by ERAU that Plaintiff committed misconduct was the "direct result of a flawed and biased proceeding." (Complaint ¶¶10, 51.) The Complaint describes how ERAU did not provide a "fair and equitable process" and "and acted on pervasive gender stereotypes." (Complaint ¶¶52, 55.) The Complaint further alleges that ERAU employed a process that found him responsible for sexual misconduct through a biased investigative process – without any opportunity for a hearing – that relied on hearsay and ignored evidence that supported John Doe's version of the events in question. (Complaint ¶¶87.)

Respectfully, this case has very little to do with whether or not Plaintiff violated the ERAU Sexual Misconduct Policy. Plaintiff has not asked – and will not ask – the Court to determine the

---

[1] This is absolutely consistent with the allegation in the Complaint:

> In a fair and unbiased system, whether someone is a "victim" is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning. ERAU has reversed this process *and assumed that John Doe was guilty* because he was a male accused of sexual assault rather than evaluating the case on its own merits.

(Complaint ¶51 (emphasis supplied).)

[2] In this way, ERAU appears to have taken the old trial-lawyers advice: "If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table and attack your opponent." *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996).

facts of whether Plaintiff committed a sexual assault.  Nor has the Plaintiff asked this Court to "second guess" a school disciplinary decision.[3]  Plaintiff concurs with the following judicial consensus:

> It is not the Court's role to . . . to evaluate whether the Court would have made the same judgment calls on evidence and other issues as [the school] did… This Court is not a super-appeals court for sexual misconduct cases.

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016) (finding in favor of accused student).  *See Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) (Title IX selective enforcement claim is evaluated "regardless of the student's guilt or innocence"); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015) ("The Court's role, of course, is neither to advocate for best practices or policies nor to retry disciplinary proceedings"); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005) (not the court's task "to make an independent determination about" the underlying events).

## FACTS

Plaintiff is a student at ERAU.  He is training to be a pilot.  He is also a student-athlete who received a scholarship.  (Complaint ¶3.)   ERAU is a private university in Daytona Beach, Florida. (Complaint ¶4.)  ERAU is a recipient of federal funds.  (Complaint ¶87(b).)

## A.      The ERAU Sexual Misconduct Policy

### 1.      Background

This case is one of many amidst a growing national controversy about the responses of colleges and universities to alleged sexual assaults on campuses.  After years of criticism for being too lax on campus sexual assault, on April 11, 2011, the U.S. Education Department's Office of Civil Rights ("OCR") sent a  "Dear Colleague Letter" to colleges and universities.  Letter from Office for Civil Rights, U.S. Dep't of Educ. (April 11, 2011).  The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and universities must have transparent, prompt procedures to

---

[3] Plaintiff, of course, denies that he engaged in any misconduct.

investigate and resolve complaints of sexual misconduct. The procedures adopted by schools has received substantial criticism from federal courts. For example, one judge recently observed:

> Sexual assault is a deplorable act of violence… Universities have perhaps, in their zeal to end the scourge of campus sexual assaults, turned a blind eye to the rights of accused students. Put another way, the snake might be eating its own tail. Joe Dryden et. al., *Title IX Violations Arising from Title IX Investigations: The Snake Is Eating Its Own Tail*, 53 Idaho L. Rev. 639 (2017).

*Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881, 892-893 (S.D.Ohio 2018).

On September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public comment." Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017). These procedures, which took effect after the facts of this case, may be found at 34 CFR 100.6-100.11 and 34 CFR part 101. In withdrawing the Dear Colleague Letter, OCR observed that prior actions

> may have been well-intentioned, but… led to the deprivation of rights for many students — both accused students denied fair process and victims denied an adequate resolution of their complaints.

*Id.* at 1-2. OCR further said:

> Legal commentators have criticized the [Dear Colleague Letter]… for placing 'improper pressure upon universities to adopt procedures that do not afford fundamental fairness.' [As a result, many schools have established procedures for resolving allegations that] lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation.

*Id.*, *quoting* Open Letter From Members Of The Penn Law School Faculty: *Sexual Assault Complaints: Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015; *Rethink Harvard's Sexual Harassment Policy*, Boston Globe (Oct. 15, 2014).

## 2.    The ERAU Sexual Misconduct Policy

ERAU has adopted a "Civil Rights Equity & Sex / Gender Based Harassment, Discrimination, and Sexual Misconduct Policy." This is referred to as the "Sexual Misconduct Policy." (Complaint ¶63 and Exhibit E.) The Sexual Misconduct Policy states that it was adopted, in part to comply with

various guidance from the Department of Education, including the 2011 Dear Colleagues Letter. (Complaint ¶64; Sexual Misconduct Policy §I.)

The Sexual Misconduct Policy requires that "there must be clear, knowing, and voluntary consent prior to and during sexual activity." The Sexual Misconduct Policy prohibits sexual activity with "someone you know to be or should know to be incapacitated." The definition of "incapacitated" in the Sexual Misconduct Policy is complicated and confusing but in regard to alcohol use, provides that "incapacitation is a state beyond drunkenness or intoxication." (Complaint ¶¶67-69.)

Allegations of sexual misconduct are reported to and investigated by the school's Title IX Coordinator. (Complaint ¶¶65, 78.) The standard for determining if a violation has occurred is the preponderance of the evidence; the Sexual Policy does not indicate that a person accused of misconduct is innocent until proven guilty. (Complaint ¶73-74.) ERAU has adopted a "Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, and Sexual Misconduct Resolution Process." This is referred to as the "Resolution Process." The Resolution Process sets forth procedures ERAU employs to investigate and adjudicate allegations of violations of the Sexual Misconduct Policy. (Complaint ¶¶76-77 and Exhibit F.) The Resolution Process provides that allegations of sexual misconduct are handled by what is referred to as the "single investigator model." The Title IX Coordinator assigns an investigator to interview witnesses, gather evidence, and determine if a violation of the Sexual Misconduct Policy has occurred. (Complaint ¶84(a).) ERAU promises as "a fundamentally fair resolution" and a decision based solely on evidence presented during the resolution process that is "credible, relevant, based on fact, and without prejudice." However, many traditional due process-type protections are not present. The accused student is not permitted to remain silent and is not presumed innocent. There is no hearing. Students accused of sexual misconduct are not given an opportunity to question their accusers or any adverse witnesses.

(Complaint ¶¶84(a), 87(a).)  The investigator literally serves as the police, judge and jury in a semi-secret process.[4]  The Resolution Process provides for a limited appeal process, known as "reconsideration."   The grounds for reconsideration are limited to claims of: (i) new evidence; (ii) bias; and (iii) "a Civil Rights Violation occurred under the [Sexual Misconduct Policy.]  The request for reconsideration is reviewed by the Title IX Coordinator for the other ERAU campus.  If the request is granted, the reviewing official may re-open the investigation.  (Complaint ¶83.)

## B.    The Allegations Against John Doe

John Doe was accused of sexual misconduct arising out of events that occurred on October 26, 2019 (the "Incident").[5]  Simply:  John Doe and Jane Roe engaged in sexual activity after drinking at a Halloween party.  Both John Doe and Jane Roe claim to have been intoxicated.  (Complaint ¶¶9-

---

[4] Students accused of misconduct are entitled to be accompanied by an advisor of their choice throughout the process.  The advisor may be an attorney, but ERAU makes it difficult for attorneys to act as advisors.  For example, ERAU administrators will insist on communicating only with students, not with the attorney, and the Resolution Process states that ERAU will not accommodate schedules.  The role of an advisor is strictly limited; advisors may not represent an accused student and may only "confer quietly with their advisees as necessary, as long as they do not disrupt the process." (Complaint ¶¶28, 79.)

[5] Defendant improperly attaches heavily redacted copies of text messages allegedly between John Doe and Jane Roe to support an argument that Plaintiff admitted to wrongdoing.  At the motion to dismiss stage, this Court's review is "limited to the four corners of the complaint" and as such this Court is limited to considering the complaint itself and any documents incorporated by reference, which are central to the claims. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  The supplemental evidence provided by ERAU is outside the scope of the pleadings, as the text messages were specifically *not* incorporated into the Complaint.  (Complaint ¶12(a) ("John Doe does not have copies of these text message and, as a result, is unable to provide an accurate summary of their conversations prior to the party.")  In addition, the text messages should not be considered because they are not central to the plaintiff's claims (which focus on the conduct of ERAU) and it is impossible  to confirm their authenticity.  *See Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005.)

The inference of guilt ERAU seeks to draw from the text messages is contradicted by other allegations in the Complaint.  For example, the Complaint provides significant support, beyond Plaintiff's denial of misconduct, for the claim that he did not commit sexual misconduct.  Witness JD provided a statement indicating that Jane Roe admitted that she never indicated a lack of consent.  (Complaint ¶15(c).)  Witness RT provided a statement indicating that he actually heard Jane Roe provide consent.  (Complaint ¶16(d).)  The inference ERAU seeks to draw from the text messages is also contradicted by other evidence in the record outside the Complaint, including Affidavits from John Doe and his attorney, Bryan Lambert.   (Doc#4-1; Doc#4-2.)

12.)  John Doe unequivocally denies engaging in any misconduct or violation of the Sexual Misconduct Policy.  (Complaint ¶10.)

Jane Roe submitted a complaint to the ERAU Title IX Office alleging that she was the victim of a sexual assault.  The basis for Jane Roe's complaint was not that she did not consent to sexual activity, but that that she was too intoxicated to knowingly consent to sexual activity under the terms of the Sexual Misconduct Policy.  (Complaint ¶¶17-18.)  During an initial meeting with the ERAU Title IX Coordinator, John Doe informed the Title IX Coordinator that he was very intoxicated when he engaged in sexual activity with Jane Roe. (Complaint ¶18(c).)   The Title IX Coordinator did not act on this statement. (Complaint ¶56.)  John Doe was suspended form his athletics team. (Complaint ¶19.)   After a 'mediation' was unsuccessful, on January 8, 2020 John Doe was informed that Jane Roe had "requested to move forward with a formal Title IX investigation" and that his suspension from an athletics team would remain in effect.  (Complaint ¶¶23-24.)   Two days later, on January 10, 2020, John Doe submitted a report to the Title IX Office alleging that he, too, was the victim of sexual misconduct.  In this report, John Doe indicated that on the night of the incident, he was "too intoxicated to consent to the sexual acts of [Jane Roe.]" (Complaint ¶26 and Exhibit A.)   ERAU did not respond to John Doe's complaint against Jane Roe.  (Complaint ¶¶27, 56.)

ERAU conducted an investigation.  During the investigation, John Doe again indicated that he was too intoxicated to engage in consensual sexual activity with Jane Roe.  John Doe also provided the investigator with three sworn statements supporting his version of events.  (Complaint ¶¶14, 15, 16.)  John Doe was permitted to view the final investigative report, but could not retain a copy.  John Doe was not provided with any opportunity to ask questions of Jane Roe or other adverse witnesses.

On March 24, 2020 John Doe was informed that the Title IX investigation was completed and was provided with a copy of an "Outcome Letter."  The March 24, 2020 Outcome Letter indicated that John Doe had been found responsible for "Non-Consensual Sexual Intercourse." (Complaint

¶35, Exhibit B.)   The March 24, 2020 Outcome Letter indicated that John Doe had violated the Sexual Misconduct Policy because Jane Roe was incapacitated when she consented to sexual activity with John Doe.  The March 24, 2020 Outcome Letter did not address John Doe's claim that he was a victim of sexual misconduct because he, too, was intoxicated.  (Complaint ¶35, Exhibit B.)

On April 1, 2020 John Doe submitted an appeal, referred to by ERAU as a "Request for Reconsideration."  As part of his appeal, John Doe noted that he had submitted a claim that he was a victim of sexual misconduct which had not been addressed.  John Doe also noted various procedural irregularities, including the fact that the Title IX Coordinator failed to take into account "transcripts, witnesses, and witness statements" that supported John Doe's version of the events. (Complaint ¶36.) The Appeal was reviewed by the Associate Dean of Students & Title IX Coordinator for the ERAU campus in Arizona.  (Complaint ¶37.) During a phone call, the Associate Dean of Students & Title IX Coordinator in Arizona indicated her belief that there was both procedural and gender bias.  Later, the Associate Dean of Students & Title IX Coordinator in Arizona expressed concern that she was "getting push back" from the Florida Title IX Coordinator.  (Complaint ¶38.)   Nonetheless, the Associate Dean of Students & Title IX Coordinator in Arizona granted John Doe's appeal and asked for the case to be reviewed by a New Investigator.  (Complaint ¶39, Exhibit C; Doe Aff. ¶6.)

On June 10, 2020 the New Investigator issued an Outcome Letter.  The June 20, 2020 Outcome Letter is substantially similar to the March 24, 2020 Outcome Letter.  The June 20, 2020 Outcome Letter summarily dismissed John Doe's claim that he was also intoxicated.  (Complaint ¶41, Exhibit D.)  John Doe has been dismissed from ERAU.  He faces, *inter alia,* damage to his academic and professional reputations.  He will be limited in his ability to enroll at other institutions of higher education and to pursue a career.  He also will lose a scholarship and the ability to compete in athletics. (Complaint ¶58; Doe Aff. ¶¶10-11.)  This litigation shortly followed.

## ARGUMENT

This Court denied a motion to dismiss substantially identical claims for breach of contract and Title IX selective enforcement in *Doe v. Rollins College*, 352 F. Supp. 3d 1205, 1207 (M.D.Fla. 2019). The decision in *Rollins College* is not an outlier. *See Mancini v. Rollins College*, M.D.Fla. No. 6:16-cv-2232, 2017 U.S. Dist. LEXIS 113160 (July 20, 2017) (denying motion to dismiss breach of contract and Title IX claims against school); *Doe v. Lynn Univ., Inc.,* 235 F. Supp. 3d 1336 (S.D. Fla. 2017) (denying motion to dismiss breach of contract claims against school).[6]

### A.      Standard

The Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Baker v. Batmasian,* 730 F.App'x 776, 779 n. 6 (11th Cir. 2018), *citing Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011).

### B.      Plaintiff Is Not Stating A Title IX Erroneous Outcome Claim

Defendant suggests that Plaintiff is asserting an erroneous outcome claim.  Def. Memo at PageID#356, 364-366.)  This is incorrect.  Plaintiff is asserting a selective enforcement theory under Title IX, only.  (*See* Complaint ¶57 ("ERAU violated Title IX by selectively enforcing its sexual assault policies…").)

---

[6] Other recent lawsuits against private schools challenging Title IX procedures have survived preliminary motions as federal courts expressed concern about the discriminatory actions of schools and/or the failure of schools to comply with their own procedures as a result of pressure from the Department of Education.  *See e.g. Brown Univ.*, *supra* (denying motion to dismiss based on alleged "pressure [from OCR] on universities"); *Doe v. Amherst College*, 238 F.Supp.3d at 216 (denying motion for judgment on pleadings; policies enacted due to OCR pressure); *Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887, at *29 (Mar. 31, 2017) (rejecting argument that DCL required breach of college handbook); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student).

**C.   Plaintiff Has Stated A Valid Title IX Selective Enforcement Claim**

**1.   Standard**

To prevail on a Title IX Selective Enforcement claim, Plaintiff must demonstrate that a similarly-situated member of the opposite sex was treated more favorably. *Rollins College*, 352 F. Supp. 3d at 1211, *citing Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003).  In a selective enforcement claim, a plaintiff alleges that the decision to initiate proceedings or the penalty imposed was affected by plaintiff's gender. *Yusuf*, 35 F.3d at 715.[7] In other words, Plaintiff succeeds if he can demonstrate that a person of the opposite sex was in circumstances sufficiently similar to plaintiff's and was treated more favorably by defendant. *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009).[8]

**2.   The Allegations of the Complaint Sufficiently Support A Title IX Selective Enforcement Claim**

ERAU officials failed to initiate an investigation or disciplinary process with respect to Jane Roe after receiving credible information that Jane Roe, in addition to John Doe, may have violated the Sexual Misconduct Policy by engaging in sexual activity with John Doe while John Doe was incapacitated due to alcohol.  The Complaint alleges, "ERAU failed to take these claims seriously or conduct a full and fair investigation of John Doe's claims against Jane Roe." (Complaint ¶56.)  Plaintiff and Jane Roe engaged in the exact same sexual conduct: they both admitted to drinking; and they both allegedly had sexual contact with a person incapable of consent.  (Complaint ¶¶22, 56-57.) Yet, even

---

[7] In *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018), the Eleventh Circuit recognized the impact of *Yusuf* in establishing a framework to analyze Title IX claims. *See also Jia v. Univ. of Miami*, S.D.Fla. No. 17-cv-20018, 2019 U.S. Dist. LEXIS 23587, at *13 (Feb. 12, 2019) (following *Yusuf* test); *Doe v. Univ. of S. Alabama*, S.D.Ala. No. 17-0394, 2020 U.S. Dist. LEXIS 25961, at *39 (Feb. 14, 2020) (same); *Lynn Univ.*, , 224 F. Supp.3d at 1291 (same).

[8] ERAU suggests that "selective enforcement claims are similar to disparate treatment claims. Def. Memo at PageID#360.  This Court rejected that comparison in *Rollins College*.  352 F. Supp. 3d at 1209 n.5 ("The Court finds no merit to [defendant's] argument that Plaintiff brings a 'disparate impact' claim.").

after John Doe submitted a formal complaint, Jane Roe was not even investigated for violating the sexual misconduct policy.[9]

ERAU argues that the Title IX selective enforcement claim is deficient because "Roe is not a sufficiently similar comparator." Def. Motion at PageID#361. This argument fails because the Complaint specifically alleges that Jane Roe was in circumstances sufficiently similar to John Doe's and was treated more favorably by ERAU.[10] (Complaint ¶57(a).) This Court's decision in *Doe v. Rollins College*, *supra*, is directly on point.[11] In *Rollins College*, a student alleged that a school ignored evidence of misconduct by a female complainant uncovered during an investigation. As in this case, in *Rollins* the investigation uncovered evidence that both the accused student and the plaintiff were intoxicated while they engaged in sexual activity, yet the school only considered whether the male student had violated the school's sexual misconduct policy. 352 F. Supp. 3d at 1207. This Court, in denying a motion to dismiss, concluded that this was sufficient to state a Title IX selective enforcement claim:

---

[9] John Doe and Jane Roe did not have to ultimately receive the same sanctions. The Sixth Circuit has noted that if a school "had initiated disciplinary proceedings against [the female accuser], this process may have led to a finding of not responsible or the imposition of a lesser sanction." *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (discussing equal protection claim). But, *and this is key,* ERAU is not free to simply ignore or summarily dismiss the allegations without incurring Title IX liability.

[10] For example: John Doe was suspended from his athletics team on the basis of only an allegation prior to any investigation; Jane Roe was not suspended from her athletics team after John Doe lodged a similar accusation. (Complaint ¶19.)

[11] This Court later granted summary judgment to Rollins College on the selective enforcement claim. The primary grounds for this Court's decision was that the plaintiff could not be similarly situated to the alleged victim because the student never initiated a complaint with the school. Order at PageID#3315, *quoting Rossley v. Drake Univ.*, 342 F. Supp. 3d at 933. That aspect of Rollins College is inapplicable here; in this case, Plaintiff submitted a formal complaint. (Complaint ¶26.) Moreover, even if Plaintiff had not submitted a complaint, subsequent decisions have called this narrow distinction into question. *See University of the Sciences*, 961 F.3d at 210 n. 4 (plaintiff's "allegation that he and [the female complainant] were comparably intoxicated undermined his ability to give affirmative consent, just as it impaired hers"), *citing Miami Univ.*, 882 F.3d at 596; *Doe v. Syracuse Univ.*, N.D.N.Y. No. 5:17-cv-787, 2020 U.S. Dist. LEXIS 75995, at *47 (Apr. 30, 2020) (denying summary judgment on a selective enforcement claim where the accused student and the complainant were intoxicated, but only the complainant had submitted a report to the school);

> the information [the school] collected during the investigation could have equally supported disciplinary proceedings against Jane Roe for also violating the Sexual Misconduct Policy. Yet [the school] treated Jane Roe—a female student—differently. Preferentially even, as Plaintiff alleges. Such allegations sufficiently support a selective enforcement claim against [the school].

352 F. Supp. 3d at 1211-1212 *citing Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017).

Other Courts have similarly observed that a student states a viable Title IX Selective Enforcement claim where the school only investigates one party when both engaged in sexual activity while intoxicated.[12] The Third Circuit in *Doe v. Univ. of the Sciences,* 961 F.3d 203, 210-211 (3d Cir. 2020), held that a Plaintiff could maintain a selective enforcement claim identifying the alleged victim as a comparator where both students may have been intoxicated while engaging in sexual activity.[13]. Another court observes, "An accused student and his or her accuser can be compared to show selective enforcement if the parties allege misconduct against each other." *Rossley v. Drake Univ.*, 342

---

[12] ERAU claims that a "complainant is not a valid comparator simply because she was a party to the sexual activity at issue in the plaintiff's disciplinary proceeding." Def. Memo. at PageID#361-62 *citing Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015); *Doe v. Case W. Reserve Univ.*, 2015 WL 5522001, *6 (N.D. Ohio Sept. 16, 2015). The cases relied upon by ERAU do not appear to be good law in light of more recent decisions permitting the alleged victim to be identified as a comparator cited in the main text.

ERAU also overstates the 'similarly situated' requirement for Title IX cases. Courts in the Second Circuit – where the selective enforcement claim originated – borrowed from Title VII law to interpret Title IX. These courts observe that "similarly situated" does not mean "identical," but rather "'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' to the extent that an 'objectively identifiable basis for comparability' exists.'" *Savino v. Town of Southeast*, 983 F.Supp.2d 293, 305-306 (S.D.N.Y.2013), *quoting inter alia Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). *See also Joglo Realties, Inc. v. Seggos*, E.D.N.Y. No. 16-CV-1666, 2016 U.S. Dist. LEXIS 113057, at *29-30 (Aug. 23, 2016) (observing that "it is not necessary that the comparator be *prima facie* identical,' so long as they are materially similar enough that class status, retaliation, or animus can be inferred as the basis for the differing treatment"). In this Circuit, courts have followed this standard. *See e.g. Mujaahida Mali Rasheedah Bint Duffy v. Bates,* N.D.Fla. No. 1:15-cv-37, 2015 U.S. Dist. LEXIS 36712, at *11 (Mar. 16, 2015) ("Similarly situated does not mean identical…"), *citing Graham*, 230 F.3d at 39.

[13] The claim in *University of the Sciences* survived a motion to dismiss even though the accused student had told the investigator that the sexual activity was consensual and never submitted a complaint against his accuser. The Third Circuit explained that a selective enforcement claim was tenable under this fact pattern because the school was 'aware' that both the accused student and the could have been intoxicated. The court said, "Doe initially told the investigator that his sexual encounter with Roe 2 was mutually consensual…. But under the Policy, Doe's allegation that he and Roe 2 were comparably intoxicated undermined his ability to give affirmative consent, just as it impaired hers." 961 F.3d at 210 n. 4.

F. Supp. 3d 904, 933 (S.D.Iowa 2018), *citing Stenzel v. Peterson,* D.Minn. No. 17-580, 2017 U.S. Dist. LEXIS 148467 (Sep. 13, 2017).[14]  In *Rossley*, a court found that a viable Title IX claim existed where the male student, as in this case, told a school official he might be the victim of a sexual assault.  The school official declined to initiate an investigation into the allegations of the female student.  Notably, in *Rossley,* the knowledge of the school officials alone was sufficient to create an inference that sex was a motivating factor in a school's decision to discipline a student.[15]  The court said,

> Although Defendants claim Plaintiff cannot allege facts to show any possible disparate treatment was motivated by gender, the disputed facts themselves—whether an arguably similarly situated man and woman were treated differently—raise the specter of gender bias… when contrasting the experiences of two alleged victims—one a woman and the other a man—and noting the possible disparate treatment, it is reasonable for a jury to consider gender-biased motivations based on these facts.

*Rossley*, 342 F. Supp. 3d at 934-935.  And, in *Doe v. Brown Univ.*, 327 F. Supp. 3d 397 (D.R.I. 2018), the court indicated that this was sufficient to create a Title IX selective enforcement issue.  The court said:

> Both [the male student] and [the female student] were students at Brown. Both brought complaints of sexual assault. Both complaints of sexual assault occurred, at most, within six months of each other. Brown investigated [the female student's] complaint; it ignored [the male student's] complaint. While the two are not exactly identical, the allegations as pleaded present [the male student] and [the female student]  as similarly situated.

227 F. Supp. 3d at 413.  *See also Doe v. Syracuse Univ.*, N.D.N.Y. No. 5:17-cv-787 (TJM/ATB), 2020 U.S. Dist. LEXIS 75995, at *33-35 (Apr. 30, 2020) (denying cross motions for summary judgment on claim that school's failure to investigate female where both male and female engaged in sexual activity when intoxicated; "there are questions of fact about whether gender bias motivated the fact that [the male student] received a penalty for the incident and [the female student] did not."); *Amherst Coll.*, 238 F. Supp. 3d at 223 ("when the College learned [the female student] may have initiated sexual activity

---

[14] *Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017), is inapposite.  Def. Memo. at PageID#362.  In *Plummer* the court concluded that there was "no sound basis for an inference of gender bias" because the school imposed the same discipline on both a male and a female student arising out of the incident.  860 F.3d at 780.

[15] In this case, as in *Rossley*, the school has mandatory reporting policies and the discretion to initiate an investigation even without the cooperation of the alleged victim.  (Complaint ¶70.)

with [plaintiff] while he was… incapable of consenting, the College did not encourage him to file a complaint, consider the information, or otherwise investigate"); *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 402 (W.D.N.Y. 2017) (student alleged gender bias, in part, on the fact that school "panel questioned him extensively about whether he was intoxicated… but failed to question her about whether he appeared intoxicated; this, according to Plaintiff, 'is consistent with a view of men as predators and women as guardians of virtue'"). *Cf. Miami Univ.*, 882 F.3d at 596-97 (finding equal protection claim plausible with allegations that university pursued disciplinary action solely against male student in the face of evidence that both male and female student violated sexual misconduct policy because of his gender).[16]

ERAU claims – without support in the Complaint – that the school perceived Plaintiff's complaint against Jane Roe as "bad-faith gamesmanship" and that, therefore, the school "had a legitimate non-discriminatory reason not to take disciplinary action."[17] Def. Memo. at PageID#363. Nothing in the Complaint permits this conclusion; in fact, the Complaint suggests alternative motivations for the school's actions that would have to be ignored.[18]   (Complaint ¶53-57.)   The

---

[16] *Miami Univ.* dealt with a deliberate indifference claim at the pleading stage, which does not require a similarly situated individual. The relevant portion of the *Miami Univ.* decision arose in the context of an equal protection claim, which required a similar analysis the identification of a similarly situated individual. 882 F.3d at 595-596. This Court cited to the equal protection aspect of *Miami Univ.* in its discussion of the selective enforcement claim in denying the motion to dismiss in *Rollins College.* 352 F. Supp. 3d at 1212. And the Third Circuit also relied on *Miami Univ.* in discussing the selective enforcement claim. 961 F.3d at 211.

[17] ERAU at numerous times asserts that Plaintiff's complaint against Jane Roe could be summarily rejected because it was not made in "good faith." *See e.g.* Def. Memo. at PageID#363. Of course, ERAU only *assumed* the allegation was made in bad faith; an assumption that is completely contrary to the basic rule that on a motion to dismiss a plaintiff is entitled to the *benefit* of all reasonable inferences. This assumption is not reasonable, regardless. ERAU ignores the allegations John Doe complained about his own intoxication numerous times and that he was discouraged from submitting a cross-complaint. (Complaint ¶¶18(c), 22, 29.) ERAU also ignores the reports of independent witnesses that John Doe was intoxicated. (Complaint ¶¶15(b), 16(b). And ERAU ignores that the bizarre fact that Title IX coordinator relied upon unsupported biological assumptions about the ability of men to maintain an erection while intoxicated. (Complaint ¶¶41, 43.)

[18] ERAU completely misrepresents that record by suggesting that "Plaintiff lashed out" by making an allegation against Jane Roe "*after*… informal resolution attempts failed." Def. Memo. at PageID#363 (emphasis supplied). The Complaint alleges that John Doe *twice* made a complaint to the Title IX Coordinator prior to the efforts at informal resolution. (Complaint ¶¶18(c), 22.)

Complaint alleges that ERAU ignored his complaint, in part, because the school was subject to pressure from the Department of Education and, as a result, had adopted a stereotypical view of males as sexual aggressors and females as passive.[19] (Complaint ¶¶ 49-50, 55, 61.) At least four circuit courts of appeals have found allegations that a school was reacting, in part, to pressure from Department of Education is relevant to alleging a plausible Title IX discrimination claim. *See Doe v. Univ. of the Sciences*, 961 F.3d at 210 ("when Doe's allegations about selective investigation and enforcement are combined with his allegations related to pressure applied by the 2011 Dear Colleague Letter, we conclude that he states a plausible claim of sex discrimination"); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (Department of Education action "provides a backdrop, that, when combined with other circumstantial evidence of bias in Doe's specific proceeding, gives rise to a plausible claim."); *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir.) ("There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance… in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults."); *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019) (the Dear Colleague Letter "and accompanying pressure gives [plaintiff] a story about why [a school] might have been motivated to discriminate against males accused of sexual assault").[20]

## D.    Plaintiff Has Stated A Valid Claim For Breach Of Contract

### 1.    Standard

Florida law governs the breach of contract claim. Under Florida law, the elements for breach of contract are "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages

---

[19] ERAU also seems to be admitting that it essentially has an unwritten, race-to-the-Title-IX-Office policy where ERAU pursued Jane Roe's case instead of Plaintiff's because Jane Roe made the allegation first – an unwritten policy that would violate the Title IX and contractual obligations to have a fair and equitable system.

[20] A selective enforcement claim is viable regardless of the plaintiff's underlying guilt or innocence. *Yusuf v. Vassar Coll.*, 35 F.3d at 715.

resulting from the breach." *Cordell Funding, LLLP v. Jenkins*, 722 F. App'x 890, 894-95 (11th Cir. 2018), *quoting Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

A student and a private university in Florida have a contractual relationship. *John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 102 So. 637 (1924); *Sharick v. Southeastern University of Health Science*s, Inc., 780 So.2d 136, 138 (Fla. 3rd DCA 2000). The terms and conditions of that contractual relationship may include the publications of the private university at the time of enrollment. *Sharick*, 780 So.2d at 138. The university's publications are sometimes referred to an "implied-in-fact contract" rather than an express contract. *Jarzynka v. St. Thomas Univ. School of Law*, 310 F.Supp.2d 1256, 1268-1269 (S.D.Fla. 2004). Regardless of whether conceived as an "implied" or explicit contract, courts are clear that the terms of this relationship are generally set forth in university catalogs, student manuals, student handbooks, and other university policies and procedures. *Ali v. Stetson Univ., Inc.*, 340 F.Supp.2d 1320, 1328 (M.D. Fla. 2004), *quoting Univ. of Miami v. Militana*, 184 So.2d 701, 704 (Fla. 3d DCA 1966); *Villard v. Capella Univ.*, M.D.Fla. No. 6:17-cv-1429, 2017 U.S. Dist. LEXIS 220541, at *4 (Dec. 21, 2017).

### 2.   The Allegations Of The Complaint Sufficiently Support A Breach Of Contract Claim

ERAU argues that Plaintiff has failed to identify "any specific provision" of the Sexual Misconduct Policy or other policies "that ERAU" violated. Def. Memo. at PageID#368. Plaintiff respectfully refers to Court to paragraphs 86-87 of the Complaint (listing breaches). Specific breaches and arguments are addressed *infra*.

### a.   The Conduct Occurred Off Campus

The Sexual Misconduct Policy unambiguously states that the "jurisdiction" of the policy is limited to "activities on University owned and or operated property." (Complaint ¶66, *citing* Sexual Misconduct Policy §III.) The alleged conduct in this case occurred at a private party at private house off campus. (Complaint ¶86.) As a result, the Complaint alleges that the school did not act in accordance with the express terms and conditions of its policy. ERAU's reliance on general terms in

the Introduction to the Sexual Misconduct Policy (Def. Memo. at PageID#369) violates the established contract interpretation rule that "a specific clause takes precedence over a general clause." *Ibis Lakes Homeowners Assn. v. Ibis Isle Homeowners Assn.*, 102 So.3d 722, 728 (Fla.App. 2012), *quoting Raines v. Palm Beach Leisureville Cmty. Ass'n*, 317 So. 2d 814, 817 (Fla.App. 1975)

### b.    ERAU Did Not Provide A Fair Process

The Sexual Misconduct Policy and Resolution Process contain a number of guarantees of fundamental fairness.[21]  The Resolution Process, for example, provides that "all investigations will be thorough, reliable, and impartial" and that a Responding Party has the "right to a fundamentally fair resolution, as defined in these processes."  (Complaint ¶87(a).)

Plaintiff is not "grip[ing] that the process was not fair."  Def. Memo. at PageID#368.  Nor is Plaintiff simply expressing a "subjective dissatisfaction with the outcome."  Def. Memo at PageID#369.  Instead, and consistent with numerous prior decisions involving school discipline, the Complaint lists five different ways ERAU breached this explicit and implied obligation, including: (i) the use of a biased investigator and process (Complaint ¶87(d)); (ii) the failure to provide Plaintiff the opportunity to confront adverse witnesses (Complaint ¶87(e)); (iii) the reliance on impermissible gender stereotypes (Complaint ¶87(f)); (iv) the failure to provide an outcome based on "credible and

---

[21]  ERAU correctly observes that "there are no implied contractual provisions arising out of the U.S. Constitution" for private universities.  Def. Memo. at PageID#367.  But that is not the basis of Plaintiff's claim.  The Complaint alleges that ERAU makes a number of specific, contractual, guarantees of fundamental fairness.  (Complaint ¶87(a).)  Moreover, "federal notions of fairness in student disciplinary proceedings… require, at a minimum, 'rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.'" *Univ. of the Sciences*, 961 F.3d at 214-215, *quoting Goss v. Lopez*, 419 U.S. 565 (1975).  The *Univ. of the Sciences* court, in assessing a breach of contract claim, also observed that sexual misconduct cases "differ from garden-variety breach-of-contract disputes involving colleges and universities because of the impact of the 2011 Dear Colleague Letter and colleges' and universities' reactions to it."  961 F.3d at 213.

reliable facts" (Complaint ¶86(g)); and (v) the failure to comply with federal law by permitting John Doe to effectively be represented by the attorney of his choice (Complaint ¶87(h)).

In *Rollins College,* this Court found that a student in similar circumstances as Plaintiff alleged sufficient claims for breach of contract and the implied covenant of good faith. As in this case, the student in *Rollins College* identified a number of procedural flaws in the "handling and adjudication" of a complaint of sexual misconduct. This Court found that the school breached contractual guarantees of fairness, including an an implied covenant of good faith and fair dealing by failing to provide the student with an investigatory and adjudicatory process that was "essentially fair." 352 F.Supp. 3d at 1212. (*Compare* Complaint ¶87.)'" (Id. ¶ 100.) As in this case, the student in *Rollins College* allegedly used a biased investigator and failed to provide the student "the opportunity to cross-examine or otherwise question Jane Roe, reached the outcome without sufficient evidence, and conducted its investigation and adjudicatory process without complying with federal law and the Clery Act. 352 F.Supp. 3d at 1212. This is *exactly* what Plaintiff alleges in ¶¶87(d)–87(h) of the Complaint.

This Court reached the same conclusion in *Mancini.* In *Mancini,* this Court denied a motion to dismiss breach of contract and breach of the covenant of good faith claims brought by a student. 2017 U.S. Dist. LEXIS 113160, at *21 ("allegations that Defendant disregarded its own policies in reaching the Decision are sufficient to state plausible contract and quasi-contractual claims). In *Lynn Univ.*, a court in the Southern District court denied a motion to dismiss breach of contract and breach of the implied covenant of good faith claims under Florida law where a student alleged a "flawed and unfair proceeding" infected by gender bias. 235 F. Supp. 3d at 1343. Other federal courts have denied motions to dismiss similar claims from other states. *See e.g. Univ of Sciences, supra* (reversal of dismissal of breach of contract claims; failure to provide student a hearing violated contractual guarantee of fundamental fairness; *Doe v. Trustees of Boston College*, 892 F.3d 67, 88 (1st Cir. 2018) (reversing dismissal of breach of contract claims; "whenever a school expressly promises no less than

17

basic fairness…" a court must "ensure that the disciplinary proceedings were conducted with basic fairness"); *Amherst College*, 238 F. Supp. 3d at 220 (overruling motion to dismiss; "Doe has alleged facts from which a jury could reasonably infer the College acted in a manner that… denied him a fair adjudication of the complaint against him").[22]  Defendant provides no contrary authority.

## E.      Defendant's Motion Directed To The Form Of Relief Fails

At the motion to dismiss stage, "a prayer for injunctive and declaratory relief requires an assessment ... of whether the plaintiff has sufficiently shown a real and immediate threat of future harm."[23]  *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, M.D.Fla. No. 6:19-cv-196-Orl-31DCI, 2019 U.S. Dist. LEXIS 103796, at *6 (June 21, 2019), *citing  Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2007).

Defendant's argument that Plaintiff cannot seek injunctive relief for a violation of Title IX is not well taken.  Def. Memo. at PageID#369-370.  The Supreme Court has held that injunctive relief may be obtained to remedy Title IX violations. *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 255 (2009) ("In a suit brought pursuant to [the] private right [of action available under Title IX], both injunctive relief and damages are available."). *See also  Woods v. Florence*, N.D.Ala. No. CV82-PT-2272-S, 1985 U.S. Dist. LEXIS 23929, at *6 (Apr. 29, 1985) ("The remedy to be ordered for failure to

---

[22] ERAU, instead of offering a definition of a fundamentally fair process, argues that "fairness" is essentially whatever is contained in the provisions of a school's policies.  Def. Memo. at PageID#368 ("As a private university, ERAU was free to design its disciplinary process, and Plaintiff was free to accept or reject those terms.").  ERAU thus argues that as long as a school complies with its policies, a school, by definition, acted in a fundamentally fair manner.  This is the definition of circular reasoning.  Instead of offering proof or argument, ERAU simply asserts that its policies are fair and applied in a fair manner, and then invites this Court to accept that compliance with the policies means it acted fairly.   Presumably, ERAU would suggest that the school would be free to adopt procedures from witch trials – such as asking accused students to recite the Lord's Prayer or weighing them against a stack of bibles – and, so long as the school followed those procedures, the process was 'fair.'  This is not the law.

[23] The Court should consider deferring consideration of this issue.  "A motion to dismiss directed at the form of relief requested is improper." *Pratt v. Rowland*, 769 F.Supp. 1128, 1135 (N.D.Cal. 1991), *citing* 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice para. 12.07[2.-5], at 12-67 (2d ed. 1991). *See also Gordon v. Jenne*, S.D.Fla. No. 06-60766, 2006 U.S. Dist. LEXIS 110234, at *14 (Oct. 30, 2006) ("This kind of fact-specific determination as to the appropriateness of this form of relief is not appropriately made on the pleadings alone.")

comply with Title IX is as extensive as the program benefited by the federal funds involved."), *citing Grove City College v. Bell*, 687 F.2d 684, 700 (3rd Cir. 1982).

Defendant's effort to couch an argument in terms of 'standing' is unavailing because the Complaint describes the irreparable harm Plaintiff will suffer if injunctive relief is not provided. *Compare* Def. Memo. at PageID#370. The imposition of discipline by ERAU would deny Plaintiff the benefits of education at his chosen school, would damage his academic and professional reputation, would prevent him from competing athletically, would result in the loss of a scholarship, and may affect his ability to enroll at other institutions of higher education. (Complaint ¶¶44, 58, 89.) This has been found to constitute irreparable harm. In *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017), the Sixth Circuit observed that a suspended student would "suffer reputational harm both on and off campus based on a finding rendered after an unfair hearing." The Fifth Circuit in *Plummer* observed that sanctions imposed by a university could have a "substantial lasting impact on [students'] personal lives, educational and employment opportunities, and reputations in the community." 860 F.3d at 773, *citing Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016).[24]

Other courts have granted permanent injunctive relief vacating any disciplinary records and findings related to the allegations of sexual misconduct similar to that described in the Amended Complaint. In *Doe v. Visitors of George Mason*, 179 F. Supp. 3d 583, 587-88 (E.D. Va. 2016), a court considered the appropriate remedy after a student was improperly expelled following a constitutionally inadequate disciplinary process that found him responsible for sexual misconduct. The court found, and

---

[24] Permanent injunctive relief is appropriate because Plaintiff's loss is not necessarily compensable with money damages. "The loss of educational and career opportunities he will encounter if not reinstated and allowed to graduate is not readily compensable in money damages." *Ritter v. Oklahoma*, W.D.Okla. No. CIV-16-043 8, 2016 U.S. Dist. LEXIS 60193, at *8 (May 6, 2016). *See also Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 829 (E.D.Mich. 2018) ("Money damages cannot compensate Plaintiff for the reputational harm he has already suffered and will continue to suffer as a consequence of sexual assault allegations."); *Haney v. W. Chester Univ.*, E.D.Pa. No. 18-02456, 2018 U.S. Dist. LEXIS 138639, at *28 (Aug. 16, 2018) ("Expulsion also is likely to affect Plaintiff's ability to enroll at other institutions of higher education and to pursue a career. Neither money damages nor any other legal remedy can compensate for these injuries.").

the school did not contest, that vacating the prior discipline, and reinstating the student, "with any reference to his… expulsion on misconduct grounds expunged from his educational records" was appropriate. 179 F.Supp.3d at 587-88. In *Doe v. Brown Univ.*, *supra*, following an expedited consolidated bench trial on both the merits of Plaintiff's case and his request for a preliminary injunction, the court found that the school had breached a contract by failing to follow certain procedures in the school's code of student conduct. The Court ordered the school to "vacate its finding and sanction against [the student] and expunge his record accordingly." 210 F. Supp. 3d at 346. *See also Doe v. Trustees of Boston College* et al, D. Mass. No. 1:15-cv-10790 (Docket Entry #200, May 14, 2020) (after jury found in favor of Plaintiff on a breach of contract claim related to the handling of a sexual misconduct allegation, court ordered permanent injunctive relief including "vacating of the adverse finding, expungement of suspension on this basis and no reporting or dissemination of same to any third-party inquiring about [the student].")

## CONCLUSION

The Motion should be denied.

FOR PLAINTIFF:

/s/ Joshua Engel
JOSHUA ADAM ENGEL (OH 0075769)
    (TRIAL COUNSEL)
    *Pro hac vice*
ANNE TAMASHASKY (OH 0064393)
    *Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com


Lori A. Sochin (FL 013048)
LUBELL | ROSEN
1 Alhambra Plaza, Suite 1410
Coral Gables, FL 33134
(305) 655-3425
(305) 442-9047
las@lubellrosen.com


## CERTIFICATE OF SERVICE

    This certifies that the foregoing was filed electronically on October 13, 2020.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


    /s/ Joshua Engel
    Joshua Adam Engel (Ohio No. 0075769)
    *pro hac vice*

21