UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE,

    Plaintiff,

vs.                              CASE NO. 6:20-cv-01220-WWB-LRH

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

    Defendant.
_____/

## DECLARATION OF AUTUMN MEYERS-PARKER

I, Autumn Meyers-Parker, hereby state, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the factual statements contained herein are made of my personal knowledge and are true and correct.

1. My name is Autumn Meyers-Parker. I have personal knowledge of the facts set forth in this Declaration and know them to be true and correct. I am over the age of eighteen and am competent to execute this Declaration.

2. I give this Declaration for use in the above-styled civil action.

3. Since 2018, I have served as a Title IX Investigator at Embry Riddle Aeronautical University's ("ERAU") campus at Daytona Beach, Florida.

4. As a Title IX Investigator, I am personally familiar with ERAU's Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, & Sexual Misconduct Policy for the 2019-2020 school year (the "Sexual Misconduct Policy"), a true and accurate copy of which is attached to Plaintiff's Complaint as Exhibit 5 (Doc. 1-5). I am also personally familiar with

ERAU's Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, & Sexual Misconduct Resolution Process for the 2019-2020 school year (the "Resolution Process"), a true and accurate copy of which is attached to Plaintiff's Complaint as Exhibit 6 (Doc. 1-6).

5. In January 2020, Linda Dammer, the Title IX Coordinator at the Daytona campus, asked me to conduct an independent and impartial formal investigation of an alleged incident of sexual misconduct between two ERAU students, Jane Roe and John Doe (Plaintiff in the above-styled action). A report had been filed with the Title IX office alleging that Plaintiff had non-consensual sexual intercourse with Roe. After unsuccessfully attempting informal resolution, Roe had asked ERAU to proceed with a formal investigation into the alleged incident.

6. Over the next two months, I conducted the investigation on behalf of ERAU. Though I updated Dammer on my progress throughout the investigation, she did not participate in the investigation. Nor did she give me any direction on any of my findings or conclusions.

7. At the start of my investigation, I reviewed all written intake statements, supplemental materials, and other documentary evidence the parties had previously submitted to Dammer. I also reviewed Plaintiff's formal report, dated January 10, 2020, against Roe.

8. During the course of my investigation, I investigated all sources of evidence and interviewed all witnesses the parties requested.

9. I interviewed Roe, Plaintiff, and five other witnesses about the alleged incident. I also reviewed other evidence the parties had submitted, including: (i) the text message exchange in which Plaintiff admitted to and apologized for having sex with Roe while she "could barely walk"; (ii) medical documents confirming Plaintiff's trip to the hospital for treatment and

examination after Plaintiff had unprotected sex with her; and (iii) typed witness statements provided by Plaintiff's attorney, Brian Lambert.

10. On at least four occasions while the case was pending, either Dammer or I asked Plaintiff to provide text messages, photos, and videos from the party. On each occasion, Plaintiff either denied having any such cell phone evidence, or he claimed that he had gotten a new phone and would have to check his old phone.

11. After completing my investigation, I provided Dammer with a substantially completed draft of my written investigative report, with my own independent analysis of the evidence and credibility assessments. Dammer did not substantively contribute to or otherwise influence any part of my analysis.

12. Neither party's sex or gender factored into any aspect of my investigation, including my written analysis and assessments of the various witness statements and other evidence.

13. Dammer then drafted her portions of the report, setting forth her findings and rationale. On or about March 16, 2020, she and I finalized the investigative report.

14. Since the filing of this lawsuit, I have learned that, while the Title IX case was pending, Plaintiff had the same cell phone that he had at the party. I have also learned that Plaintiff had text messages, photos, and videos from that phone that depict Roe and/or the party. I have since reviewed this cell phone evidence that Plaintiff withheld and lied about having during the course of the Title IX proceeding, as well as his deposition testimony about it.

15. This evidence shows that, throughout the night in question, Plaintiff documented the party through photos and captioned videos that he posted to his SnapChat profile. He also took

a video of Roe from later in the night, showing her in a severely intoxicated state; in contrast, he can be heard coherently and articulately narrating the video.

16.   I consider this evidence to be highly relevant, as it tends to show that Roe lacked capacity to consent to sexual intercourse at or around the time of the incident. In contrast, it tends to show that Plaintiff was lucid, coherent, and aware of his surroundings throughout the night—including at or around the time he engaged in sexual activity with Roe. In other words, the evidence strongly supports Roe's claim that she lacked capacity to consent to sex, but it severely undermines Plaintiff's claim that he also lacked capacity to consent.

17.   Had Plaintiff provided this requested evidence, it would have been the strongest available evidence of the parties' comparative levels of intoxication at or around the time of the underlying incident.

18.   The cell phone evidence would have aided my investigation in several ways. First, it potentially would have helped me identify additional witnesses. Second, I would have asked the various witnesses about it, some of whom were depicted in the photos or videos.

19.   Third, the evidence would have been helpful for evaluating the reliability of various statements I gathered from various witnesses.  For instance, the video of Roe appears to conflict with the statements of some witnesses who provided statements on behalf of Plaintiff, including especially Witness 3's statement that Roe "was carrying herself well," "was not slurring her words," and did not "appear to . . . ha[ve] been drinking." The video of Roe raises questions about whether Witness 3 was a reliable historian of the night's events. Had I had the benefit of the video, I would have questioned Witness 3 about it.

20. As the Title IX Investigator in this case, I find it deeply troubling that Plaintiff withheld this highly relevant cell phone evidence and repeatedly lied about its existence. This willful deception severely undermined my investigative efforts. In my estimation, it also severely undermines the reliability of other statements Plaintiff provided to ERAU.

So sworn this 1st day of April 2021.

_____
AUTUMN MEYERS-PARKER