**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

JOHN DOE,

Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.

Defendant

Case No. 6:20-cv-01220-WWB-LRH

Judge:  BERGER

PLAINTIFF'S MOTION *in limine*

Plaintiff John Doe respectfully submits this combined Motion *in limine.*

Local Rule 3.01(a) statement of the precise relief requested and basis for the request: Plaintiff seeks the following Orders for trial in this matter:

1. An Order prohibiting Defendant from arguing the underlying 'guilt' of Plaintiff;

2. An Order prohibiting any reference to Plaintiff as a 'rapist,' referring to or classifying the acts described in the Complaint as rape, or the use of similar inflammatory language (including reference to Jane Roe as a 'victim'); and

3. An Order prohibiting the introduction of evidence or argument related to "unclean hands."

1

**MEMORANDUM**

**FACTS**

Plaintiff John Doe is a student at Embry-Riddle Aeronautical University ("ERAU").
ERAU is a private university in Daytona Beach, Florida.  (Verified Complaint, Doc#1,
PageID#2.)  John Doe is training to be a pilot.  He is also a student-athlete who received
a scholarship.  (Verified Complaint, Doc#1, PageID#1-2.)

This is one of many cases to have arisen amidst a continuing national controversy
about the responses of colleges and universities to alleged sexual assaults on campuses.
After years of criticism for being too lax on campus sexual assault, on April 11, 2011, the
U.S. Education Department's Office of Civil Rights ("OCR") sent a Dear Colleague Letter
(the "DCL") to colleges and universities. Letter from Office for Civil Rights, U.S. Dep't of
Educ. (April 11, 2011).  The Seventh Circuit, in an opinion by Judge (now Justice) Barrett,
found that the DCL and accompanying pressure from the Department of Education is
relevant to this type of case because it gives accused students "a story about why [a
school] might have been motivated to discriminate against males accused of sexual
assault." *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019).  *See also Doe v. Univ.
of the Sciences*, 961 F.3d 203, 214 (3d Cir. 2020) (noting that courts have considered
claims by students that schools "were allegedly intimidated by the 2011 DCL and
associated threats of litigation or [Department of Education] scrutiny"); *Doe v. Miami
University*, 882 F.3d at 594 (treating as relevant allegations that pressure from the
government led school to discriminate against men in its sexual-assault adjudication
process).

ERAU has adopted a "Civil Rights Equity & Sex/Gender Based Harassment,
Discrimination, and Sexual Misconduct Policy."  (the "Sexual Misconduct Policy"; Doc#1-

5.) Allegations of sexual misconduct are reported to and investigated by the school's Title IX Coordinator.[1]  (Doc#1-5.)  The Sexual Misconduct Policy was adopted, in part to comply with various guidance from the Department of Education, including the DCL. (Doc#1-5, PageID#47; Dammer Depo., Doc#87-1, PageID#702.)   ERAU has also adopted a "Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, and Sexual Misconduct Resolution Process."  (the "Resolution Process"; Doc#1-6.)   The Resolution Process sets forth procedures ERAU employs to investigate and adjudicate allegations of violations of the Sexual Misconduct Policy. ERAU promises as "a fundamentally fair resolution" and a decision based solely on evidence presented during the resolution process that is "credible, relevant, based on fact, and without prejudice." (Doc#1-6, PageID#100-101.)

John Doe was accused of sexual misconduct arising out of events that occurred on October 26-27, 2019 (the "Incident").  John Doe and Jane Roe engaged in sexual activity after drinking at a Halloween party.  Both John Doe and Jane Roe claim to have been intoxicated and told the ERAU Title IX Coordinator that they were unable to provide consent to the sexual activity.  (*See, generally*, Verified Complaint, Doc#1.) In this litigation, John Doe claims that the decision of ERAU to not investigate his claim is consistent with stereotypical views of gender.  (*See, generally,* Expert Report of Aya Gruber, Doc#91-3; Affidavit of Gruber, Doc#4-3.)

---

[1] The Sexual Misconduct Policy requires that "there must be clear, knowing, and voluntary consent prior to and during sexual activity."  The Sexual Misconduct Policy prohibits sexual activity with "someone you know to be or should know to be incapacitated."  The definition of "incapacitated" in the Sexual Misconduct Policy is complicated and confusing but, in regard to alcohol use, provides that "incapacitation is a state beyond drunkenness or intoxication." (Doc#1-5, PageID#50-51.)

On October 19, 2018 Jane Roe submitted a complaint to the ERAU Title IX Office alleging that she was the victim of a sexual assault.  (Doc#S-95 at 4.)  On November 13, 2019, the Title IX Coordinator met with John Doe about Jane Roe's allegations.  John Doe informed the Title IX Coordinator that he was very intoxicated when he engaged in sexual activity with Jane Roe. (Doc#S-95 at 11; Dammer Depo., Doc#87-1, PageID#718.) John Doe informed the Title IX Coordinator that Jane Roe had initiated some sexual activity and verbally indicated her consent to intercourse.  (Doc#S-95 at 11-12)  The Title IX Coordinator did not act on this statement or initiate an investigation into possible misconduct by Jane Roe.[2]  (Affidavit of John Doe, Doc#4-1, PageID#127-129.)  The Title IX Coordinator discounted John Doe's statements and discouraged John Doe from filing his own complaint against Jane Roe.  (See Verified Complaint, Doc#1, PageID#8-9.)

John Doe and Jane Roe attempted to mediate the issue with a campus minister. When the mediation was unsuccessful, on January 8, 2020, Jane Roe "requested to move forward with a formal Title IX investigation."  (Doc#S-95 at 4-5.)    On January 10, 2020, John Doe submitted a report to the Title IX Office alleging that he, too, was the victim of sexual misconduct.    (Doc#4-1, PageID#129;   Jan. 10, 2020 Complaint, Doc#87-7, PageID#883.)  John Doe indicated that on the night of the incident, he was "too intoxicated to consent to the sexual acts of [Jane Roe.]"   (Jan. 10, 2020 Complaint, Doc#87-7, PageID#883.)

ERAU did not respond to John Doe's complaint against Jane Roe.  (Aff. of John Doe, Doc#4-1, PageID#129-130; Dammer Depo., Doc#87-1, PageID#712-713.)  There

---

[2] The Resolution Process does not require ERAU to wait for a formal complaint to initiate an investigation.  (Doc#1-6, PageID#85 (authorizing investigation "if the University, based on the alleged policy violation(s), wishes to pursue a resolution").)

was no resolution of his allegation or finding about whether John Doe is incapacitated. (Dammer Depo., Doc#87-1, PageID#712, 714.)    Instead, ERAU conducted an investigation solely into the allegations *against* John Doe.  (Doc#S-95 at 8-10.)

On March 24, 2020, John Doe was informed that the Title IX investigation was completed and that he had been found responsible for "Non-Consensual Sexual Intercourse" because Jane Roe was incapacitated when she consented to sexual activity with John Doe.   (March 24, 2020 Letter, Doc#87-9).   The Outcome Letter did not specifically address John Doe's claim that he was a victim of sexual misconduct because he, too, was intoxicated.  (*Id.*)

On April 1, 2020 John Doe submitted an appeal, referred to by ERAU as a "Request for Reconsideration."  (Appeal, Doc#87-11.)  The Appeal was reviewed by the Associate Dean of Students & Title IX Coordinator for the ERAU campus in Arizona.  She identified concerns about bias, granted John Doe's appeal, and ordered that case to be reviewed by a new investigator.  (April 16, 2020 Letter., Doc#1-3, PageID#40.)   The new investigator only read the report; he did not conduct any new investigative work or, even, speak to John Doe, Jane Roe, or any witnesses.  (Langston Depo. at 35-36.)

On June 10, 2020 the new investigator issued an Outcome Letter.  This letter is substantially similar to the Outcome Letter and summarily dismissed John Doe's claim that he was also incapacitated.  (Doc#1-4.)   John Doe was dismissed from ERAU.  This litigation followed.

**ARGUMENT**

**A.     Defendant Should Be Precluded From Arguing The Underlying 'Guilt' Of Plaintiff**

Plaintiff has asserted a Title IX Selective enforcement claim and a breach of contract claim.  This Motion seeks to prohibit any effort by Defendant to argue that the school did not breach its statutory and contractual obligations because Plaintiff was "guilty" of the underlying conduct anyway.  For example: during his deposition Plaintiff was questioned extensively about the nature of his relationship with Jane Roe, the underlying sexual encounter, and whether he consented to sexual activity with Jane Roe.[3]

To prevail on a Title IX Selective Enforcement claim, Plaintiff must demonstrate that a similarly-situated member of the opposite sex was treated more favorably. *Rollins College*, 352 F. Supp. 3d at 1211, *citing Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003).  In a selective enforcement claim, a plaintiff alleges that the decision to initiate proceedings or the penalty imposed was affected by plaintiff's gender. *. Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).[4]  In other words, Plaintiff succeeds if he can demonstrate that a person of the opposite sex was in circumstances sufficiently similar to plaintiff's and was treated

---

[3] Note the subtle but significant difference.  Plaintiff believes it would be appropriate to ask John Doe, "Did you tell the investigator you consented to sexual activity to Jane Roe?" *That* question relevantly focuses on the investigation, not the underlying incident.

[4] In *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018), the Eleventh Circuit recognized the impact of *Yusuf* in establishing a framework to analyze Title IX claims. *See also Jia v. Univ. of Miami*, S.D.Fla. No. 17-cv-20018, 2019 U.S. Dist. LEXIS 23587, at *13 (Feb. 12, 2019) (following *Yusuf* test); *Doe v. Univ. of S. Alabama*, S.D.Ala. No. 17-0394, 2020 U.S. Dist. LEXIS 25961, at *39 (Feb. 14, 2020) (same); *Lynn Univ.*, , 224 F. Supp.3d at 1291 (same).

more favorably by defendant. *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009).

Plaintiff has also asserted a breach of contract claim.   Under Florida law, the elements for breach of contract are "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Cordell Funding, LLLP v. Jenkins*, 722 F. App'x 890, 894-95 (11th Cir. 2018), *quoting Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

The issue before the Court is: "were Plaintiff and [Jane Roe] treated equally when they brought their respective complaints of sexual misconduct." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 932 (S.D.Iowa 2018).   The Second Circuit, describing a Selective Enforcement claim, clearly held that the underlying facts are not relevant:   "Such a claim asserts that, *regardless of the student's guilt or innocence*, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d. Cir. 1994) (emphasis supplied).   *See also Doe v. Univ. of the S.*, 687 F.Supp.2d 744, 755 (E.D.Tenn. 2009) (school discipline cases come before the court "in limited posture" and "are grounded primarily upon the manner in which the University officials conducted the process").

This case is about the process actually used by the school, and the evidence the school actually relied upon or ignored.  The jury should be informed of the nature of the allegations by Jane Roe, and the response by John Doe, in order to understand the events that led to the investigation and disciplinary hearing.  However, arguments and

evidence on the underlying "guilt" or "innocence" of John Doe is not relevant and would be unduly prejudicial.  Fed. R. Evid. 401, 402, 403.[5]

*Doe v. Brown Univ*., 210 F. Supp. 3d 310, 313 (D.R.I. 2016), is precisely on point. In that case, following a consolidated preliminary injunction hearing/bench trial on the merits, the court considered whether the school breached contractual guarantees contained in the student handbook.  The court noted that, as in this case, "The problem in this case is that the process was not properly applied."  210 F. Supp. 3d at 331.  In evaluating that claim, the court explicitly declined to consider whether the student committed the underlying conduct on relevance grounds.  The court in *Brown Univ.* said, "It is important to make it unequivocally clear at the outset that the Court's only role in this case is to determine whether Doe's disciplinary" process was done in accordance with the contract between the parties.  The court, in its role as finder of act, further emphasized that "It is not the Court's role to determine the facts of what happened between [plaintiff] and [the alleged victim]."  210 F. Supp. 3d at 313.[6]  Similarly, in another breach of contract

---

[5] Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402  allows the admission of all relevant evidence and provides, "Irrelevant evidence is not admissible." *See Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-cv-2510-WSD, 2015 U.S. Dist. LEXIS 104413, at *15-16 (N.D. Ga. Aug. 10, 2015); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999).

Under Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Rule 403 permits this Court to exclude relevant evidence only when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994).

[6] Sauce for the goose: Plaintiff, similarly, is not seeking a declaration that he is "innocent" of the underlying allegations. *See Doe v. Phillips Exeter Academy,* D.N.H. No. 16-cv-396-

case brought by a student involving allegations of sexual misconduct, a court considering motion to dismiss observed that any "decision is based on the entirety of the procedures employed by [the school], given the nature of the charges and the circumstances of the case." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 608 (D.Mass. 2016). The court specifically observed that the merits of the underlying claim were not relevant: "Finally, and to repeat, the Court is not deciding the merits of the case—in particular, whether [the plaintiff] in fact committed any form of sexual misconduct." *Id*.

This issue was also presented in a recent case before this Court. *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069-RBD-LRH, 2021 U.S. Dist. LEXIS 114806 (Feb. 25, 2021). In *Rollins College* the court considered a motion in limine by a student accused of sexual misconduct seeking to preclude the school "from arguing the underlying guilt of Plaintiff because it is not relevant and unduly prejudicial." *Id.* at *12. The school in that case concurred that "the jury should not be making a new determination on what transpired between Plaintiff and Jane Roe…" *Id.* This Court held that "the jury can consider what was presented to the investigator" but cautioned the school against "trying to turn this breach of contract trial into a sexual misconduct trial." *Id.* at *14.

**B.    Defendant Should Be Precluded From Referring To Plaintiff As A "Rapist"**

Defendant, in a number of papers filed with the Court, has referred to Plaintiff as a "rapist." (*See e.g.* PageID#1784, PageD#2445.) Plaintiff was never accused of rape; never investigated by the police; and never charged with any crime. This, and similar, inappropriate language should be prohibited by the Court. *Cf.* 11th Cir. R. 25-6

---

JL, *5-6 (Nov. 10, 2016) (declining to permit student to assert claims that essentially "seek appellate review of the investigator's factual findings and conclusions. That is not the court's role in contract-based cases such as this.").

(prohibiting "*ad hominem* or defamatory language").  As noted, *supra,* Plaintiff has not asked the Court to determine the facts of whether Plaintiff committed sexual assault.  Nor should ERAU.  *See Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016)("This Court is not a super-appeals court for… misconduct cases").

Such orders have been issued in civil trials involving allegations of sexual misconduct.  In *Kinney v. Porterfield*, D.Mont. No. CV 19-117-M-DWM, 2020 U.S. Dist. LEXIS 140405, at *7-8 (Aug. 5, 2020), the Court issued such an order, holding that "It is appropriate to exclude… the use of those specific terms as unduly prejudicial under Rule 403."  And in *Hawkins v. St. Clair Cty.*, S.D.Ill. No. 07-142-DRH, 2009 U.S. Dist. LEXIS 25755, at *4 (Mar. 30, 2009), the court issued an order precluding "any witness from referring to" some parties as "victims:" and other parties as an "offender" or "rapist."  *Cf. Lovett v. Cole*, S.D.Ohio No. 1:11-cv-277, 2014 U.S. Dist. LEXIS 157756, at *8 fn. 5  (Nov. 7, 2014) ("Defendants shall not refer to Plaintiff as a "rapist," "kidnapper," or "robber" during trial, including during opening statement and closing argument.")

## C.      Defendant Should Be Precluded From Arguing 'Unclean Hands'

ERAU's previously suggested that that Jon Doe has "unclean hands" because he declined to turn over some evidence to the investigator should not lead to a denial of this Motion.  (*See e.g.* PageID#1802-1803.)    Plaintiff is not aware of any cases where a school asserted an "unclean hands" defense in a Title IX suit.  Evidence in support of an unclean hands defense is not relevant and would be unduly prejudicial.  Fed. R. Evid. 401, 402, 403.

This evidence is not relevant because an alleged wrongdoer is not permitted to use alleged after-discovered misconduct by John Doe to effectively immunize its

otherwise unlawful decisions   *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 358 (1995).[7]  In *McKennon,* the Court recognized that private suits for discrimination vindicate important policy objectives that would be thwarted "if after-acquired evidence of wrongdoing" was used to "bar all relief."  513 U.S. 358.  The unclean hands defense is unavailable "where Congress authorizes broad equitable relief to serve important national policies"  *Id.*

Moreover, the primary evidence of "unclean hands" by John Doe that ERAU seeks to offer is irrelevant and unduly prejudicial because it is not, in fact, bad enough conduct to qualify as evidence of "unclean hands."  John Doe's hands are, at worst, smudged – nothing he is alleged to have done during the investigation qualifies as a matter of law as "unclean hands:"  "Unclean hands is an equitable defense that is akin to fraud; its purpose is to discourage unlawful activity." *Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co*., 105 So. 3d 602, 609 (Fla. 4th DCA 2013). ERAU has never suggested that Plaintiff engaged in "unrighteous, unconscientious, or oppressive conduct" necessary to trigger the unclean hands doctrine.  *Tribeca Lending Corp. v. Real Estate Depot, Inc*., 42 So. 3d 258, 262 (Fla. Dist. Ct. App. 2010).  In fact, John Doe is not even required to participate in any investigation. (Doc#1-6, PageID#95.)  The Court should recall, too, that any obligation of John Doe to turn over evidence to the school is based on a contractual obligation, only.  Florida courts have held that although "[a] failure to comply with the material terms of [an agreement] may be a breach of contract, and it may not be nice,…

---

[7] This maxim "does not mean that courts must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law… " *Johnston v. Yellow Cab Transit Co*., 321 U.S. 383, 387 (1944) (emphasis added).

it does not amount to unclean hands." *Cong. Park Office Condos II, LLC*., 105 So. 3d at 610.

Finally, the unclean hands doctrine, to the extent it is premised on conduct by John Doe unrelated to the investigation, is also not applicable because Defendant is not the 'victim' of any of Plaintiff's alleged misconduct.   *See Larson v. Correct Craft, Inc.*, No. 6:05-cv-686, 2005 U.S. Dist. LEXIS 44019, at *9 (M.D. Fla. Aug. 8, 2005) ("the misconduct alleged by those invoking 'unclean hands' must relate to the subject matter of the case"), *citing Toomer v. Witsell*, 334 U.S. 385, 393 (1948) ("previous misconduct, not having any relation to [issue before the Court], did not call for application of the clean hands maxim."

## CONCLUSION

This Court should issue the following Orders for trial in this matter:

1. An Order prohibiting Defendant from arguing the underlying 'guilt' of Plaintiff;

2. An Order prohibiting any reference to Plaintiff as a 'rapist,' referring to or classifying the acts described in the Complaint as rape, or the use of similar inflammatory language (including reference to Jane Roe as a 'victim'); and

3. An Order prohibiting the introduction of evidence or argument related to "unclean hands."

FOR PLAINTIFF:

/s/ Joshua Engel
JOSHUA ADAM ENGEL (OH 0075769)
    (TRIAL COUNSEL)
    *Pro hac vice*
ANNE TAMASHASKY (OH 0064393)
    *Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

Lori A. Sochin (FL 013048)
LUBELL | ROSEN
1 Alhambra Plaza, Suite 1410
Coral Gables, FL 33134
(305) 655-3425
(305) 442-9047
las@lubellrosen.com

## CERTIFICATE OF SERVICE

    This certifies that the foregoing was filed electronically on October 1, 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

      /s/ Joshua Engel
Joshua Adam Engel (Ohio No. 0075769)
    *pro hac vice*

## CERTIFICATION OF COUNSEL

Pursuant to the Court's January 13, 2021 Standing Order, this document is in 12-point Arial typeface, including all indented quotations, footnotes, and endnotes.

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that before filing this Motion counsel conferred with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion and obtain the relief sought without court action.

_____/s/ Joshua Engel _____
Joshua Adam Engel (Ohio No. 0075769)
*pro hac vice*