## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN DOE, | Case No. 6:20-cv-01220-WWB-LRH |
| Plaintiff, | Judge: BERGER |
| v. | PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *in limine* REGARDING BRYAN LAMBERT'S OPINIONS RELATING TO DEFENDANT'S TITLE IX PROCESS |
| EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC. | |
| Defendant | |

Plaintiff John Doe respectfully submits this Response to Defendant's Motion *in limine* Regarding Bryan Lambert's Opinions Relating to Defendant's Title IX Process.[1] (Doc#144.)

### MEMORANDUM

### BACKGROUND FACTS

Plaintiff John Doe is a student at Embry-Riddle Aeronautical University ("ERAU"). ERAU is a private university in Daytona Beach, Florida. (Verified Complaint, Doc#1, PageID#2.) John Doe is training to be a pilot. He is also a student-athlete who received a scholarship. (Verified Complaint, Doc#1, PageID#1-2.)

ERAU has adopted a "Civil Rights Equity & Sex/Gender Based Harassment, Discrimination, and Sexual Misconduct Policy." (the "Sexual Misconduct Policy"; Doc#1-5.) Allegations of sexual misconduct are reported to and investigated by the school's Title

---

[1] In accordance with Judge Berger's Standing Order, this Memorandum is in 12-point Arial typeface and not the typeface described in Revised Local Rule 1.08(a), (b). *In Re: Local Rules Amendments*, Case No: 6:21-mc-3-Orl-78 (January 31, 2021).

IX Coordinator.  (Doc#1-5.)  ERAU has also adopted a "Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, and Sexual Misconduct Resolution Process."  (the "Resolution Process"; Doc#1-6.)  The Resolution Process sets forth procedures ERAU employs to investigate and adjudicate allegations of violations of the Sexual Misconduct Policy.   The Resolution Process provides that allegations of sexual misconduct are handled by what is referred to as the "single investigator model."  The Title IX Coordinator assigns an investigator to interview witnesses, gather evidence, and determine if a violation of the Sexual Misconduct Policy has occurred. (Doc#1-6, PageID#87-89.) ERAU promises as "a fundamentally fair resolution" and a decision based solely on evidence presented during the resolution process that is "credible, relevant, based on fact, and without prejudice." (Doc#1-6, PageID#100-101.)  There is no opportunity for a hearing, and no opportunity for students accused of misconduct to question their accusers. (Dammer Depo., Doc#87-1, PageID#702.)   Many other traditional due process-type protections are not present.  The accused student is not permitted to remain silent and is not presumed innocent.  The investigator and Title IX Coordinator literally serve as the police, judge, and jury in a secret process.  The Resolution Process provides for a limited appeal. (*Id.*)

John Doe was accused of sexual misconduct arising out of events that occurred on October 26-27, 2019 (the "Incident").[2]  John Doe and Jane Roe engaged in sexual

---

[2] John Doe unequivocally denies engaging in any misconduct or violation of the Sexual Misconduct Policy.  But as much as he would like to prove his innocence, Plaintiff recognizes that is irrelevant.  John Doe is *not* asking the Court to issue an opinion on the merits of the allegations against Jane Roe.  John Doe's claims focus on the actions of Defendant and are independent of his underlying "guilt" or "innocence."  *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016) ("It is not the Court's role to . . . to evaluate whether the Court would have made the same judgment calls on evidence and other

activity after drinking at a Halloween party.  Both John Doe and Jane Roe claim to have been intoxicated and told the ERAU Title IX Coordinator that they were unable to provide consent to the sexual activity.  (*See, generally*, Verified Complaint, Doc#1.)  In this litigation, John Doe claims that the decision of ERAU to not investigate his claim is consistent with stereotypical views of gender.  (*See, generally,* Expert Report of Aya Gruber, Doc#91-3; Affidavit of Gruber, Doc#4-3.)

On October 19, 2018 Jane Roe submitted a complaint to the ERAU Title IX Office alleging that she was the victim of a sexual assault.  (Doc#S-95 at 4.)  The factual basis for Jane Roe's complaint regarding the Sexual Misconduct Policy is not initially completely clear.  She indicated that she was nervous about drinking that night and John Doe "taking advantage of her."  (Doc#S-95 at 7.)  (Doc#S-95 at 8.)  During the course of the investigation, the basis for Jane Roe's complaint became, essentially, that she was too intoxicated to consent to sexual activity.[3] (*See e.g.* Doc#S-95 at 47.)  Jane Roe told the Title IX Coordinator that John Doe was also drunk.  (Doc#S-95 at 7.)  Jane Roe requested that John Doe be suspended from the track team.  The Title IX coordinator, prior to conducting any investigation, agreed to prohibited John Doe from practicing or competing with his team.  (Dammer Depo., Doc#87-1, PageID#709 ("Q …So when you imposed the interim measure in this case you had not conducted any  investigation; right? A Correct.").

---

issues as [the school] did; or to determine whether the procedure John [Doe] received was optimal.").

[3] The conclusion of the Report makes clear that incapacitation due to intoxication is the basis for the conclusion that Jane Roe did not consent to sexual activity: "The evidence shows that the respondent should have known that the reporter could not make rational, reasonable decisions and lack the capacity to give knowing consent."  (Doc#S-95 at 55.)

On November 13, 2019, the Title IX Coordinator met with John Doe about Jane Roe's allegations.   John Doe informed the Title IX Coordinator that he was very intoxicated when he engaged in sexual activity with Jane Roe. (Doc#S-95 at 11; Dammer Depo., Doc#87-1, PageID#718.)  John Doe informed the Title IX Coordinator that Jane Roe had initiated some sexual activity and verbally indicated her consent to intercourse. (Doc#S-95 at 11-12)  The Title IX Coordinator did not act on this statement or initiate an investigation into possible misconduct by Jane Roe.[4]  (Affidavit of John Doe, Doc#4-1, PageID#127-129.)   The Title IX Coordinator discounted John Doe's statements and discouraged John Doe from filing his own complaint against Jane Roe.  (*See* Verified Complaint, Doc#1, PageID#8-9.)

John Doe and Jane Roe attempted to mediate the issue with a campus minister. Prior to this meeting John Doe requested that the Title IX Office not be involved.  He was told that the mediation would be confidential and that statements made in the meeting would not be used in the investigation.  (Verified Complaint, Doc#1, PageID#8; Feb. 11, 2020 Email, Doc#87-8, PageID#884.)

On January 8, 2020, Jane Roe "requested to move forward with a formal Title IX investigation."  (Doc#S-95 at 4-5.)    On January 10, 2020, John Doe submitted a report to the Title IX Office alleging that he, too, was the victim of sexual misconduct.   (Doc#4-1, PageID#129;  Jan. 10, 2020 Complaint, Doc#87-7, PageID#883.)  John Doe indicated that on the night of the incident, he was "too intoxicated to consent to the sexual acts of [Jane Roe.]"  (Jan. 10, 2020 Complaint, Doc#87-7, PageID#883.) The Title IX Coordinator

---

[4] The Resolution Process does not require ERAU to wait for a formal complaint to initiate an investigation.  (Doc#1-6, PageID#85 (authorizing investigation "if the University, based on the alleged policy violation(s), wishes to pursue a resolution").)

acknowledged that the January 10, 2020, report is a complaint by John Doe alleging misconduct by Jane Roe.  (Dammer Depo., Doc#87-1, PageID#736.)  On February 23, 2020 John Doe told the Investigator that he was "drunk" when he engaged in sexual activity with Jane Roe (Doc#S-95 at 12-13.)

ERAU did not respond to John Doe's complaint against Jane Roe.  (Aff. of John Doe, Doc#4-1, PageID#129-130; Dammer Depo., Doc#87-1, PageID#712-713.)  Jane Roe was never informed about the allegations against her.  (Dammer Depo., Doc#87-1, PageID#714.)  No investigation of his claims was opened.  (Dammer Depo., Doc#87-1, PageID#712.)  There was no resolution of his allegation or finding about whether John Doe is incapacitated. (Dammer Depo., Doc#87-1, PageID#712, 714; Meyers-Parker Depo., Doc#87-2, PageID#783.)

ERAU conducted an investigation solely into the allegations *against* John Doe. Jane Roe was interviewed on at least two more occasions.  (Doc#S-95 at 8-10.)  During these interviews, Jane Roe provided additional information and identified persons who might be witnesses.  The Investigator did not seek to verify any of the information provided[5] or speak to any of the witnesses mentioned by Jane Roe, even though this information was cited as important to the conclusions.  (Doc#S-95 at 13.)  The Investigator also discounted the sworn statements supporting his version of events provided by John Doe.  (Doe Aff., Doc#4-2, PageID#133.)

---

[5] For example: The Title IX Coordinator concluded that Jane Roe was credible, in part, because she "sought out and received counseling services" after the Incident.  (Doc#S-95 at 55.)  Nobody requested these records or made any effort to verify this claim. (Dammer Depo., Doc#87-1, PageID#726.)

On March 24, 2020, John Doe was informed that the Title IX investigation was completed and that he had been found responsible for "Non-Consensual Sexual Intercourse" because Jane Roe was incapacitated when she consented to sexual activity with John Doe.  (March 24, 2020 Letter, Doc#87-9).  The Outcome Letter did not address John Doe's claim that he was a victim of sexual misconduct because he, too, was intoxicated.  (*Id.*)   No similar letter was sent describing the outcome of the investigation into John Doe's complaint.  (Dammer Depo., Doc#87-1, PageID#724.)

On April 1, 2020, John Doe submitted an appeal, referred to by ERAU as a "Request for Reconsideration."  (Appeal, Doc#87-11.)   John Doe noted that he had submitted a claim that he was a victim of sexual misconduct which had not been addressed.  John Doe also noted various procedural irregularities.  (*Id.* at PageID#891-893.)  The Appeal was reviewed by the Associate Dean of Students & Title IX Coordinator for the ERAU campus in Arizona.  She identified concerns about bias, granted John Doe's appeal, and ordered that case to be reviewed by a new investigator.  (April 16, 2020 Letter., Doc#1-3, PageID#40.)   The new investigator only read the report; he did not conduct any new investigative work or, even, speak to John Doe, Jane Roe, or any witnesses.  (Langston Depo. at 35-36.)

On June 10, 2020, the new investigator issued an Outcome Letter.  This letter is substantially similar to the Outcome Letter and summarily dismissed John Doe's claim that he was also incapacitated.  (Doc#1-4.)   John Doe was dismissed from ERAU.  He faces, *inter alia,* damage to his academic and professional reputations.  He will be limited in his ability to enroll at other institutions of higher education and to pursue a career.  (Doc#4-1, PageID#130-131.)

This litigation followed.

## ARGUMENT

### A.    Standard

Defendant brings this Motion under Evidence Rules 401 and 403.

Rule 402 provides that "[r]elevant evidence is admissible" except as otherwise provided by "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.   Rule 401 provides that "evidence is relevant" if "it has any tendency  to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Rule 401 defines relevant evidence in broad terms."  *United States v. McCoy*, S.D.Fla. No. 08-14020-CR, 2008 U.S. Dist. LEXIS 133287, at *7 (Aug. 21, 2008).  *See also* See *Conway v. Chem. Leaman Tank Lines, Inc*., 525 F.2d 927, 930 (5th Cir. 1976) ("The policy of the [Federal Rules of Evidence] is one of broad admissibility…"); *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 587 (1993) ("[Rule 401's] basic standard of relevance… is a liberal one.").

Rule 403 sets forth the following balancing test for relevant evidence: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is 'an extraordinary remedy which should be applied sparingly.'" *Jones v. Carnival Corp*., S.D.Fla. No. 04-20407-CIV, 2006 U.S. Dist. LEXIS 100633, at *2 (Jan. 11, 2006), *quoting United States v. Sawyer,* 799 F.2d 1494, 1506 (11th Cir. 1986)

("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.").

**B.      This Motion Is Improper**

Defendant has no real basis for this Motion aside from the fact that the evidence in question is incredibly damaging.  Simply because evidence is harmful is not a reason to file a motion *in limine.  Pierce v. Visteon Corp.*, S.D.Ind. No. 1:05-cv-1325, 2009 U.S. Dist. LEXIS 27856, at *21 (Mar. 26, 2009) (denying motion in limine, noting "Plaintiffs cannot exclude evidence… just because it is adverse to their cause."); *Young v. City of Omaha*, D.Neb. No. 8:07CV265, 2009 U.S. Dist. LEXIS 111854, at *12 (Dec. 2, 2009) (denying motion in limine, noting "Just because evidence may tend to refute a party's position does not make that evidence inadmissible…").

**C.      The Evidence Is Relevant**

A student and a private university in Florida have a contractual relationship. *John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 102 So. 637 (1924); *Sharick v. Southeastern University of Health Science*s, Inc., 780 So.2d 136, 138 (Fla. 3rd DCA 2000). The terms of this relationship are generally set forth in university catalogs, student manuals, student handbooks, and other university policies and procedures. *Ali v. Stetson Univ.*, *Inc.*, 340 F.Supp.2d 1320, 1328 (M.D. Fla. 2004), *quoting Univ. of Miami v. Militana*, 184 So.2d 701, 704 (Fla. 3d DCA 1966).   The Resolution Process contains multiple explicit guarantees that the process will be fair and unbiased.  (Policy, Doc#1-6, PageID#87, 96, 99, 101.)

The testimony that is the subject of this Motion concerns the likely testimony by Bryan Lambert.  Lambert is an experienced attorney who served as John Doe's 'advisor'

throughout the process.  He is expected to testify that ERAU's investigators and staff had pre-judged the matter.  He will likely testify similar to his deposition testimony:

> I believe that ERAU officials were biased against John Doe.  I have been involved in numerous investigations of sexual misconduct and, as a result, I believe that I can tell when an investigator has reached a conclusion before the investigation even started.  This is how ERAU treated John Doe.

(Lambert Aff., Doc#4-2, PageID#132-133.)  Lambert would then testify to list a number of facts that render his statement non-conclusory.  (Lambert Aff., Doc#4-2, PageID#132-133.)  Defendant's objection that Lambert is familiar with criminal cases, and not school discipline cases, is not grounds for exclusion because Lambert is not testifying about legal "due process standards."  Def. Memo. at PageID#2491-2492.

This testimony is admissible under Rule 701.  Pursuant to Federal Rule of Evidence 701, lay witness testimony may be admitted if the court determines that "the opinion is 'rationally based on' the witness's own perceptions" and the opinion "will be 'helpful' to a clear understanding of the witness's testimony or the determination of a fact issue." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992), *citing* Fed. R. Evid. 701; Fed. R. Evid. 704(a). "The rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'" *Id. citing* Fed. R. Evid. 701, Advisory Committee Note on 1972 Proposed Rules.

> [T]he admission of lay opinion evidence is favored "provided it is well founded on personal knowledge and susceptible to cross-examination." Furthermore, the advisory committee's note to Rule 701 makes clear that the rule's justification relies in part on "the natural characteristics of the adversary system" and the fact that "cross-examination and argument will point up the weakness" of broadly asserted opinion testimony.

*United States v. Jackman*, 48 F.3d 1, 6 (1st Cir.1995) (citations omitted).

As acknowledged by Defendant, Lambert was present in meetings with ERAU's investigators.  Rule 701 permits a witness to testify about their own perceptions of conversations.  "[M]ost modern authorities permit the testimony if the witness had sufficient opportunity to observe the behavior or appearance of the person whose state of mind is in issue." *Collier v. Turner Industries Group, Ltd. Liab. Co.*, D.Idaho No. 4:09-CV-596-MHW, 2011 U.S. Dist. LEXIS 125093, at *2 (Oct. 28, 2011), *quoting* 27 Wright and Gold, Federal Practice & Procedure, § 6026 (2007) at 266.  *See also United States v. Rivera*, 780 F.3d 1084, 1094 (11th Cir. 2015) (noting that "opinion testimony must be based on 'firsthand knowledge or observation'," but "[w]here a witness's testimony is based upon her 'perceptions of the conversations[,]. . . the accuracy of those perceptions [is] a question for the jury'"), *citing United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986); *United States v. Wantuch*, 525 F.3d 505, 515 (7th Cir. 2008) (witness testimony about perception of conversations permissible where witness had "first-hand knowledge of the conversation … based on his direct participation, as well as his perception and observation of" defendant).

In this case, Lambert's perception of conversations with the investigators could bear on whether the investigator's actions were biased.  These opinions are rationally based on his perceptions during his work advising John Doe, are helpful to the determination of facts at issue, and are not "scientific, technical, or other specialized knowledge."  Thus, the Rule 701 exclusions are inapplicable here.

Defendant is correct that Lambert is not "omniscient."  Def. Memo. at 2491.  But that is not the requirement for admissibility.  Lambert's testimony is not a legal conclusion, but what believed was biased, improper, inappropriate, or wrong.  In other words, Lambert

will not testify that whether the conduct by ERAU's investigator was, as a matter of law, illegal; he will articulate his perceptions of why he believed the investigator was biased. In civil rights cases, this type of testimony is permissible.  This is permissible under Rule 701.  For example, in *Hansard v. Pepsi-Cola Metropolitain Bottling Co*., 865 F.2d 1461 (5th Cir. 1989), a coworker was permitted to testify to a perception that the plaintiff was not rehired because of his age.  The Fifth Circuit observed that "[c]ourts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances." *Id*. at 1466.  *See also Haun v. Ideal Industries Inc*., 81 F.3d 541, 548 (5th Cir. 1996) (permitting lay opinion testimony that the employer was acting in a discriminatory manner… "based on his perception [drawn from personal observations] and helped the jury determine whether [the employer] discriminated").

Other courts have permitted this testimony.  In a recent case, a court permitted, over a similar objection as that posed by ERAU here, a party to opine on an employer's motive in a gender discrimination case.  *Stoe v. Garland*, D.D.C. Civil Action No. 16-1618, 2021 U.S. Dist. LEXIS 173803 (Sep. 14, 2021).  The court said that such testimony was admissible "to the extent that [the witness] identifies the bases for her opinion about [defendant's] motive… based, for example, on her personal observations of how [the defendant] has treated her… previously and how [defendant] conducted himself…" 2021 U.S. Dist. LEXIS 173803, at *25.  The *Stoe* court added*:*

> the Court finds that opinion would be helpful to the jury because it offers the perspective of someone with first-hand knowledge of [the defendant's] behavior on a fact of consequence in the case…. How helpful it may be, of course, is a matter for the jury to decide. Moreover, it makes little sense to preclude a plaintiff who is suing because she believes that she was

11

discriminated against based on her gender from presenting any statement
of that opinion to the jury.

*Id.  See also Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172,

1178-80 (10th Cir. 2001) (admitting testimony of lay witness who claimed that plaintiff's

withdrawal was the result of gender discrimination when her "opinion was a means of

conveying her impression based on what she had herself perceived, and it was predicated

upon concrete facts within her own observation and recollection"); *Bailey v. Canan*, 82 F.

Supp. 2d 966, 976 n.12 (S.D. Ind. 2000) ("that [Plaintiff] felt he was harassed is not a legal

conclusion and can be found in the evidence [he] cites to for the statement he gave");

*Mikulan v. Allegheny Cty.*, W.D.Pa. Civil Action No. 15-1007, 2017 U.S. Dist. LEXIS

83315, at *20 (May 31, 2017) (permitting witnesses to testify about perceived

discriminatory actions; "these witnesses may testify to their own first-hand knowledge and

perceptions"); *Shapiro v. City of New York*, S.D.N.Y. No. 13cv8647, 2015 U.S. Dist.

LEXIS 85867, at *9 (S.D.N.Y. 2015) (concluding that employee's lay opinion testimony

that she had witnessed religiously discriminatory conduct at work was admissible under

Rule 701).  *Cf. Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997)

(admitting lay witness testimony of an "ultimate issue" when it was based on personal

observations).

In similar circumstances, Rule 701 has been applied to permit lay witnesses to

offer opinions regarding the discriminatory nature of employment decisions. *See Hansard*

*v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1465-67 (5th Cir. 1989) (permitting

testimony of one of plaintiff's supervisors that he had been fired as part of a "youth

movement" at the company, even though the witness had no firsthand knowledge of the

circumstances leading to plaintiff's termination, because the supervisor based his opinion

on his experience with defendant and its hiring policies); *Anglin v. Sears, Roebuck and Co.*, 139 F.Supp.2d 914, 922 & n. 13 (N.D. Ill. 2001) (permitting plaintiff and a former supervisor to offer their opinion that Sears violated its employment policies in terminating plaintiff); *McKenna v. Chilton Co.*, No. 86 Civ. 6707(KMW), 1991 U.S. Dist. LEXIS 1472, , * 3-5 (S.D.N.Y. Feb. 6, 1991) (denying a motion in limine to exclude the testimony of a former executive of the defendant company).

D.     **The Evidence Is Not Unduly Prejudicial**

Defendant cites no authority to support its argument that Lambert's testimony is unduly prejudicial.  Such an argument would be contrary to the authority cited, *supra*.

The fact remains that his testimony is particularly useful to the jury; just as Justice Holmes' dog could tell the difference between being kicked and being stumbled over, experienced counsel understands the difference between adverse decisions based on the merits and bias.  O.W. Holmes, Jr., The Common Law (1881).  Defendant simply does not want THIS testimony before the jury because it is compelling evidence of an unfair and biased process.  True, Lambert's testimony will increase the chances that the jury will find for Plaintiff, but that is not a proper Rule 403 objection.

## CONCLUSION

The Motion should be denied.

FOR PLAINTIFF:

/s/ Joshua Engel
JOSHUA ADAM ENGEL (OH 0075769)
    (TRIAL COUNSEL)
    *Pro hac vice*
ANNE TAMASHASKY (OH 0064393)
    *Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

Lori A. Sochin (FL 013048)
LUBELL | ROSEN
1 Alhambra Plaza, Suite 1410
Coral Gables, FL 33134
(305) 655-3425
(305) 442-9047
las@lubellrosen.com

## CERTIFICATE OF SERVICE

    This certifies that the foregoing was filed electronically on October 13, 2021.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

        /s/ Joshua Engel
        Joshua Adam Engel (Ohio No. 0075769)
            *pro hac vice*