**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN DOE, | Case No. 6:20-cv-01220-WWB-LRH |
| Plaintiff, | Judge: BERGER |
| v. | JOINT PRETRIAL STATEMENT |
| EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC. | |
| Defendant | |

Plaintiff John Doe and Defendant Embry-Riddle Aeronautical University respectfully submit this Joint Pretrial Statement.

The parties met in person on October 26, 2021 for the purposes of the preparation of this Joint Pretrial Statement.

Plaintiff indicates: Plaintiff, in accordance with the CMSO, sought to thoroughly and exhaustively discuss settlement of the action before undertaking the extensive efforts needed to conduct final preparation of the case for trial. Counsel for Defendant indicated that Defendant was not willing to consider settlement of this matter and declined to engage in such discussions.[1]

---

[1] Plaintiff indicates: Defendant has suggested that Plaintiff has negotiated previously in "bad faith" because of changing offers and is unwilling to consider counter-offers. Not so. This case involves claims for damages and injunctive relief. Without going into details (*see* Evid Rule 408), Plaintiff has made numerous proposals for varying amounts of monetary relief depending on the nature of non-monetary relief included. The fact that offers change in this type of case is to be expected as the parties seek to find creative solutions and determine interests, not just positions. Defendant also fails to recognize that claims for fees and costs under 42 U.S.C. §1988 *increase* as the case proceeds and more fees are incurred.

Defendant indicates: Defendant, in accordance with the CMSO, sought to thoroughly and exhaustively discuss settlement of the action before undertaking the extensive efforts needed to conduct final preparation of the case for trial. Counsel for Plaintiff indicated that that Plaintiff was not willing to consider counteroffers or negotiations. Then, Plaintiff requested a settlement conference with a magistrate, which Defendant does not believe will be productive.

The parties have also discussed whether assistance from the Court is desired— such as referral to a U.S. Magistrate Judge for a settlement conference. The Plaintiff believes that such a referral is appropriate after the Court rules on pending Motion for Summary Judgments so that the parties can discuss settlement with the benefit of the Court's decision on the pending Motions before undertaking the extensive efforts needed to conduct final preparation of the case for trial. (*See Doc#158.*) The Defendant does not believe that settlement is possible.

1.    **Statement Of The Basis Of The Court's Subject Matter Jurisdiction For Each Claim At Issue.**

This case arises, in part, under the laws of the United States, specifically Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. Accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This case is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

This Court may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all other claims in this case, as the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.    **The Anticipated Length Of Trial Based On The Issues Remaining At The Conclusion Of The Pre-Trial Meeting**

The parties anticipate that trial of this matter will take at least five days.

3.    **A Concise Statement Of The Nature Of The Action, Which The Court May Use In Voir Dire And In Its Preliminary Instructions To The Jury**

Plaintiff is a student at Embry-Riddle Aeronautical University ("ERAU"). ERAU is a private university in Daytona Beach, Florida.

During the 2019-2020 school year, Plaintiff was expelled after ERAU found him responsible for violating school policy by [Plaintiff would include: allegedly] engaging in non-consensual sexual intercourse with Jane Roe, also an ERAU student.

ERAU has adopted a "Sexual Misconduct Policy" and a "Resolution Process" upon which the expulsion was based. The Resolution Process sets forth procedures ERAU employs to investigate and adjudicate allegations of violations of the Sexual Misconduct

Policy. [Plaintiff would include: The Resolution Process provides that allegations of sexual misconduct are handled by what is referred to as the "single investigator model," meaning that an investigator interviews witnesses and gathers evidence before making findings of responsibility, but there is no hearing or opportunity for an accsued student to confront his accuser.] [Defendant states that this is a mischaracterization of the Resolution Process and is inappropriate to include in a joint statement.]

John Doe was accused of sexual misconduct arising out of events that occurred on October 26-27, 2019. While he was enrolled at ERAU, Plaintiff invited a fellow student, Jane Roe, to attend a party at his residence where both of them consumed alcohol prior to the sexual activity that was the basis for Doe's expulsion.

On October 28, 2019, Roe reported the incident to ERAU's Title IX office. In November 2019, Plaintiff was informed by ERAU's Title IX Coordinator that Roe had alleged that the sexual intercourse non-consensual. On January 8, 2020, after an unsuccessful attempt at informal resolution, Roe requested to move forward with a formal investigation.

On January 10, 2020, Plaintiff made a formal report of sexual misconduct against Roe based on the same incident.

On March 24, 2020, following an investigation, ERAU issued an Outcome Letter stating that Plaintiff was found to have violated the Sexual Misconduct Policy. After receiving the Outcome Letter, Plaintiff requested reconsideration of the decision. At ERAU, requests for reconsideration from the Florida campus are reviewed by the Title IX Coordinator for Defendant's Arizona campus who granted reconsideration. [Plaintiff would include: The reviewer found that Plaintiff had presented evidence that the

investigator demonstrated bias in his case.] [Defendant states that this is a disputed fact and would include: The reviewer did not find the investigator demonstrated bias, but agreed to a reconsideration.] A new investigator was assigned to review the case, and on June 10, 2020, a new Outcome Letter was issued, again finding that Plaintiff had violated the Sexual Misconduct Policy.

Plaintiff filed a two-count Complaint against ERAU alleging [Defendant: ERAU discriminated against him on the basis of his gender] [Plaintiff: that, guilt or innocence aside, the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both[2]], in violation under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., and breach of contract.

4.    **Brief Summaries Of The Parties' Respective Cases**

    a.    **Plaintiff's Case**

Plaintiff intends to present evidence that this case is one of many amidst a growing national controversy about the responses of colleges and universities to alleged sexual assaults on campuses. After years of criticism for being too lax on campus sexual assault, on April 11, 2011, the U.S. Education Department's Office of Civil Rights ("OCR") sent a "Dear Colleague Letter" to colleges and universities. Letter from Office for Civil Rights, U.S. Dep't of Educ. (April 11, 2011). The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct.  The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and universities must have transparent, prompt, and equitable procedures to investigate and resolve complaints of

---

[2] Doe v. Embry-Riddle Aeronautical Univ., M.D.Fla. No. 6:20-cv-1220-WWB-LRH, 2021 U.S. Dist. LEXIS 128761, at *7-8 (May 28, 2021),

sexual misconduct. The procedures adopted by schools in response to the Dear Colleague Letter received substantial criticism and, on September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public comment."

ERAU has adopted a "Civil Rights Equity & Sex/Gender Based Harassment, Discrimination, and Sexual Misconduct Policy." (the "Sexual Misconduct Policy.) Allegations of sexual misconduct are reported to and investigated by the school's Title IX Coordinator. The Sexual Misconduct Policy was adopted, in part to comply with various guidance from the Department of Education, including the DCL. A separate Resolution Process sets forth procedures ERAU employs to investigate and adjudicate allegations of violations of the Sexual Misconduct Policy. The Resolution Process provides that allegations of sexual misconduct are handled by what is referred to as the "single investigator model." The Title IX Coordinator assigns an investigator to interview witnesses, gather evidence, and determine if a violation of the Sexual Misconduct Policy has occurred. ERAU promises as "a fundamentally fair resolution" and a decision based solely on evidence presented during the resolution process that is "credible, relevant, based on fact, and without prejudice." The Resolution Process provides for a limited appeal.

John Doe was accused of sexual misconduct arising out of events that occurred on October 26-27, 2019 (the "Incident"). John Doe unequivocally denies engaging in any misconduct or violation of the Sexual Misconduct Policy. But as much as he would like to prove his innocence, Plaintiff recognizes that is irrelevant.

John Doe and Jane Roe engaged in sexual activity after drinking at a Halloween party.  Both John Doe and Jane Roe claim to have been intoxicated and told the ERAU Title IX Coordinator that they were unable to provide consent to the sexual activity.  On October 19, 2018 Jane Roe submitted a complaint to the ERAU Title IX Office alleging that she was the victim of a sexual assault.  The factual basis for Jane Roe's complaint in regard to the Sexual Misconduct Policy is not completely clear.  She indicated that she was nervous about drinking that night and John Doe "taking advantage of her." During the course of the investigation, the basis for Jane Roe's complaint became, essentially, that she was too intoxicated to consent to sexual activity.  Jane Roe told the Title IX Coordinator that John Doe was also drunk.  Jane Roe requested that John Doe be suspended from the track team.  The Title IX coordinator, prior to conducting any investigation, agreed to prohibited John Doe from practicing or competing with his team.

On November 13, 2019, the Title IX Coordinator met with John Doe about Jane Roe's allegations.  John Doe informed the Title IX Coordinator that he was very intoxicated when he engaged in sexual activity with Jane Roe.  John Doe informed the Title IX Coordinator that Jane Roe had initiated some sexual activity and verbally indicated her consent to intercourse.  The Title IX Coordinator did not act on this statement or initiate an investigation into possible misconduct by Jane Roe. The Title IX Coordinator discounted John Doe's statements and discouraged John Doe from filing his own complaint against Jane Roe.

John Doe and Jane Roe attempted to mediate the issue with a campus minister.  Prior to this meeting John Doe requested that the Title IX Office not be involved.  He was

told that the mediation would be confidential and that statements made in the meeting would not be used in the investigation.

On January 8, 2020, Jane Roe "requested to move forward with a formal Title IX investigation."

On January 10, 2020, John Doe submitted a report to the Title IX Office alleging that he, too, was the victim of sexual misconduct. John Doe indicated that on the night of the incident, he was "too intoxicated to consent to the sexual acts of [Jane Roe.]" ERAU did not respond to John Doe's complaint against Jane Roe. Jane Roe was never informed about the allegations against her. No investigation of his claims was opened. There was no resolution of his allegation or finding about whether John Doe is incapacitated.

ERAU conducted an investigation solely into the allegations *against* John Doe. Jane Roe was interviewed on at least two more occasions. During these interviews, Jane Roe provided additional information and identified persons who might be witnesses. The Investigator did not seek to verify any of the information provided or speak to any of the witnesses mentioned by Jane Roe. John Doe also provided the investigator with sworn statements supporting his version of events.

On March 24, 2020, John Doe was informed that the Title IX investigation was completed and that he had been found responsible for "Non-Consensual Sexual Intercourse" because Jane Roe was incapacitated when she consented to sexual activity with John Doe. The Outcome Letter did not address John Doe's claim that he was a victim of sexual misconduct because he, too, was intoxicated and no similar letter was sent describing the outcome of the investigation into John Doe's complaint.

On April 1, 2020 John Doe submitted an appeal.  The Appeal was reviewed by the Associate Dean of Students & Title IX Coordinator for the ERAU campus in Arizona.  She identified concerns about bias, granted John Doe's appeal, and ordered that case to be reviewed by a new investigator.  The new investigator only read the report; he did not conduct any new investigative work or, even, speak to John Doe, Jane Roe, or any witnesses.  On June 10, 2020 the new investigator issued an Outcome Letter.  This letter is substantially similar to the Outcome Letter and summarily dismissed John Doe's claim that he was also incapacitated.   John Doe was dismissed from ERAU.

In this case, Plaintiff asserts two claims.

First, Plaintiff alleges that ERAU violated Title IX under a selective enforcement theory. Under the selective enforcement theory, Plaintiff alleges that Jane Roe was a similarly-situated member of the opposite sex who was treated more favorably.  Plaintiff anticipates introducing evidence that, Rollins officials failed to initiate an investigation or disciplinary process with respect to Jane Roe after receiving credible information that Jane Roe, in addition to Plaintiff, may have violated the sexual misconduct policy by engaging in sexual activity with John Doe while John Doe was incapacitated due to alcohol.

Second, Plaintiff alleges that ERAU breached contractual promises contained in the Sexual Misconduct Policy and Resolution Process.  Under Florida law, a student and a private university have a contractual relationship.  Plaintiff alleges that ERAU breached contractual provisions guaranteeing that the process will be fair and unbiased.  Plaintiff intends to submit evidence that ERAU didn't treat him fairly or equitably and decided he was responsible before hearing his side of the story."  Plaintiff also alleges that Sexual

Misconduct Policy cannot be applied to his alleged conduct because the Policy unambiguously states that the "jurisdiction" of the policy is limited to "activities on University owned and or operated property." Plaintiff intends to present evidence that the alleged conduct in this case occurred at a private party at private house off campus.

### b.     Defendant's Case

Plaintiff will fail to make his required evidentiary showing for either of his claims. The "selective enforcement" claim under Title IX cannot be proven because: (1) the evidence will show that ERAU did not treat Roe more favorably; (2) Doe and Roe are not similarly situated requiring the same treatment; and (3) ERAU had a legitimate non-retaliatory reason for any adverse action it took against Plaintiff. The breach-of-contract claim cannot be proven because the evidence will show that ERAU did not materially breach any provision of the Sexual Misconduct Policy or Resolution Process, and Plaintiff's material breach of those policies excused any alleged non-performance.

Text messages exchanged between Doe and Roe before and after the party, which were provided to ERAU are the backdrop of the underlying combined investigation. These statements by each of the students provided significant understanding of what transpired during the incident.

The evidence will show that that ERAU fully investigated Plaintiff's report against Roe. ERAU combined both parties' reports into one report and investigated them as a single incident.  ERAU interviewed both parties and all witnesses they identified during the investigation, and it gave them an opportunity to review and comment on their and others' statements. In particular, Meyers-Parker questioned witnesses extensively about both parties' alcohol consumption and their level of intoxication. Given that Plaintiff's

voluntary intoxication would not be a defense to Roe's complaint against him, the purpose of gathering such evidence was to explore Plaintiff's claim against her. ERAU also asked both parties to provide cell phone evidence which would have been highly relevant to the issue of their intoxication and capacity to consent. Roe provided the only cell phone evidence she had: text messages before and after the party.

Rather than producing evidence from his cell phone Plaintiff repeatedly lied about having any, frustrating ERAU's attempts to gather the evidence. Nevertheless, during the investigation, ERAU treated both parties equitably by exhausting all available means to uncover the revealing cell phone evidence.

Based on the evidence, Doe and Roe were not similarly situated because 1) Plaintiff was not incapacitated, like Roe was, 2) unlike Plaintiff, Roe had not admitted to non-consensual sexual intercourse as Plaintiff did with several lengthy text messages apologizing profusely and expressing remorse for taking advantage of Roe while she was incapacitated (Doe admitted he was terrified that she would report him and that his "life could be over." and, at no point did he accuse Roe of any misconduct or claim that he too "could barely walk."), 3) unlike Roe, Plaintiff made numerous admissions showing that his January 10 report had no merit (he admitted that he consented to the sexual activity), 4) Plaintiff produced a cell phone video depicting Roe in a severely intoxicated state after the party, just before they had sex, vindicating ERAU's decision to take disciplinary action against Plaintiff but not Roe and 5) Plaintiff waited more than ten weeks to file his claim against Roe—only after informal resolution of Roe's claim was unsuccessful.

Plaintiff cannot prove his contract claim because he cannot present any evidence that ERAU materially breached any terms of the policies forming the basis of the alleged

contract. There is no merit to Plaintiff's pseudo-jurisdictional argument that ERAU could not discipline him because he sexually assaulted Roe at an off-campus—rather than on-campus—residence. The Sexual Misconduct Policy states that ERAU "reserves the right to act on incidents occurring on-campus or off- campus when the off-campus conduct could have an on-campus impact or impact on the educational mission of the University." Based on the trauma Roe described in her impact statement, Plaintiff's rape of Roe "could have" an on-campus impact, bringing it within the Title IX office's jurisdiction.

Additionally, Defendant will present evidence of Doe's unclean hands. Doe was repeatedly asked to provide evidence during the investigation, which he did not. He later admitted to withholding the evidence even though he believed it was relevant and material to the investigation. He admitted he withheld the evidence because he knew it would be used against him.

Importantly, even if Plaintiff prevailed on either of his claims, he would not be entitled to any damages. Plaintiff has made clear that he is not seeking a claim based on an erroneous outcome. Instead, he only argues that he was treated unfairly because the university did not properly investigate *his* claim against Roe. His claim against Roe is unrelated to the fact that he was found responsible for violation of the sexual misconduct policy. His claim against Roe is unrelated to the fact that he was expelled. His claim against Roe is unrelated to any of the damages that he alleged in this case.

5.    **Statement Of The Type And Amount Of Damages Sought (If Any)**

Plaintiff seeks economic injury damages in the amount of $194,100.00. This is calculated as follows: The discipline imposed by ERAU has caused John Doe to be denied the benefits of education at his chosen school, damaged his academic and

professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career. Computation of Damages: (i) John Doe Paid Counsel for the school disciplinary proceeding $7500; (ii) John Doe has been delayed for 2 years in his career as a commercial pilot resulting in lost wages in the amount of approximately $186,600.00.

Plaintiff seeks additional reputational injury damages in an amount to be determined by the jury. Plaintiff does not intend to suggest an amount to the jury for reputational damages. *See Gray v. Florida Dept. of Juvenile Justice*, M.D.Fla. No. 3:06-cv-990-J-20MCR, 2007 U.S. Dist. LEXIS 6649, at *4-5 (Jan. 30, 2007) (noting that Plaintiff may leave amount of damages to the discretion of the jury).

Plaintiff also intends to seek: (a) permanent injunctive relief; and (b) costs and attorney's fees pursuant to 42 U.S.C. §1988. Such relief would not be presented to the jury but would be for the Court to consider.

Defendant disputes that these are properly sought damages under Plaintiff's two causes of action.

**6.     Pending Motions Or Other Matters Requiring Action By The Court**

- Defendant's Motion for Summary Judgment (Doc#101)

- Plaintiff's Motion for Partial Summary Judgment (Doc#96)

- Defendant's Daubert Motions (Doc#102, Doc#103, Doc#104)

- Plaintiff's Daubert Motion (Doc#91)

- Defendant's Motions *in limine* (Doc#142, Doc#143, Doc#144, Doc#145, Doc#146, Doc#147)

- Plaintiff's Motion *in limine* (Doc#140)

- Plaintiff's Motion for Referral To Magistrate Judge for Settlement Conference (Doc#158)

**ATTACHMENTS**

1. Exhibit Lists

2. Witness Lists[3]

3. Deposition Designations

4. Jointly-Proposed Jury Instructions and Verdict Form

5. Voir Dire

6. Stipulations to Agreed Facts

---

[3] Plaintiff objects to Defendant calling any witnesses not disclosed pursuant to Fed. R. Civ. P. 26(a).  (Doc#126-1.)

FOR PLAINTIFF:

/s/ Joshua Engel
JOSHUA ADAM ENGEL (OH 0075769)
    (TRIAL COUNSEL)
    *pro hac vice*
ANNE TAMASHASKY (OH 0064393)
    *pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

Lori A. Sochin (FL 013048)
LUBELL | ROSEN
1 Alhambra Plaza, Suite 1410
Coral Gables, FL 33134
(305) 655-3425
las@lubellrosen.com

FOR DEFENDANT:

/s/ Shaina Stahl
Shaina Stahl (Florida Bar No. 77643)
    (TRIAL COUNSEL)
NELSON MULLINS BROAD & CASSEL
390 N. Orange Avenue, Suite 1400
Orlando, FL 32801
(407) 839-4200
shaina.stahl@nelsonmullins.com

Daniel A. Cohen
    *pro hac vice*
Jeffrey R. Daniel
    *pro hac vice*
Nelson Mullins Riley & Scarborough
LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
(404) 322-6000
dan.cohen@nelsonmullins.com
jeff.daniel@nelsonmullins.com

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was filed electronically on November 2, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_____/s/ Joshua Engel _____
Joshua Adam Engel (Ohio No. 0075769)
*pro hac vice*