**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOHN DOE,

       Plaintiff,

v.                                 Case No.: 6:20-cv-1220-WWB-LRH

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

       Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 96), Defendant's Response (Doc. 123), and Plaintiff's Reply (Doc. 124). Also before the Court is Defendant's Dispositive Motion for Summary Judgment (Doc. 101), Plaintiff's Opposition (Doc. 126), and Defendant's Reply (Doc. 127).

## I.    BACKGROUND

Plaintiff, John Doe, is a student and member of the track team at Defendant Embry-Riddle Aeronautical University, Inc.'s ("**ERAU**") Daytona Beach campus. (Doc. 161-21 at 1). On October 26, 2019, Plaintiff, along with his friends and roommates, hosted a Halloween party at his home. (Doc. 106 at 7, 11; Doc. 119 at 17:8–14, 18:7–23). Plaintiff invited fellow ERAU student and track team member Jane Roe to attend the party as his guest. (Doc. 101-6 at 1–2; Doc. 106 at 7). Prior to the party, Plaintiff and Jane Roe had gone on three to four dates and Plaintiff felt that they were likely to begin a relationship. (Doc. 106 at 7, 11; Doc. 119 at 114:6–11, 19–22, 116:3–5). At the time, Plaintiff was not

aware that Jane Roe was in a long-distance relationship with another individual. (Doc. 106 at 42; Doc. 119 at 203:5–11).

The day before the party, Plaintiff and Jane Roe exchanged numerous text messages regarding the party. (Doc. 101-6 at 6–7). In the messages, Jane Roe expressed concern that Plaintiff was only interested in having sex with her and would "tak[e] advantage of [her]" while she was intoxicated. (*Id.* at 6). Plaintiff unequivocally stated that he did not wish to have sex with her unless they were both sober and it was "the right [ ] romantic time." (*Id.*; *see also* Doc. 106 at 12).

On the day of the party, Plaintiff began drinking at roughly 8:00 p.m. (Doc. 106 at 11; Doc. 119 at 19:23–24). Throughout the course of the night, he estimates that he consumed roughly fifteen drinks consisting of beer, wine, liquor shots, and mixed drinks containing a large percentage of vodka. (Doc. 106 at 11; Doc. 119 at 19:6–8, 22:22–23, 23:4, 24:1–22, 27:1–3, 28:6–7, 30:2–5, 33:22–25). Plaintiff continued to text Jane Roe throughout the night and sometime prior to her arrival Jane Roe acknowledged that Plaintiff was already intoxicated. (Doc. 101-6 at 2–3). At 10:56 p.m., Plaintiff informed Jane Roe that he "overdid it" and was going to lay down. (*Id.* at 3). Plaintiff also began to vomit or dry heave during that time. (Doc. 106 at 11, 28; Doc. 119 at 54:3–9). Despite this, Plaintiff continued to drink. (Doc. 119 at 55:18–20).

Jane Roe arrived at the party between 11:00 p.m. and midnight and consumed approximately four to five liquor shots. (Doc. 106 at 7, 9; Doc. 119 at 62:24–63:5, 64:9–10). Jane Roe stated that when she arrived at the party, Plaintiff "was already drunk and out of it." (Doc. 106 at 7). At some point, Plaintiff and Jane Roe went to Plaintiff's bedroom where they kissed, exchanged oral sex, and had intercourse. (Doc. 106 at 8, 11–12; Doc.

119 at 117:3–5, 118:17–119:4, 121:14–25, 122:11–13, 123:9–16). The next day Plaintiff drove Jane Roe home and, after learning that she was upset about the previous night, made several apologies for the night's events. (Doc. 101-6 at 4; Doc. 106 at 8, 12; Doc. 119 at 143:7–10). Jane Roe stated that Plaintiff was "more sober" than she was and that she felt he had taken advantage of her. (Doc. 101-6 at 4).

As result of the incident, on October 28, 2019, Jane Roe filed a report with Linda Dammer, ERAU's Title IX Coordinator, alleging that Plaintiff had engaged in non-consensual sexual intercourse with her. (Doc. 87-1 at 9:10–11, 18–21; Doc. 101-1, ¶ 5). At that time, Jane Roe asked that Plaintiff be suspended from the track team pending the investigation, which Dammer granted. (Doc. 87-1 at 31:20–22, 83:24–84:11; Doc. 101-1, ¶ 11). On November 13, 2019, Plaintiff met with Dammer to provide his intake statement. (Doc. 101-1, ¶ 7; Doc. 106 at 11). At the meeting, Plaintiff expressed to Dammer that he was also intoxicated and felt that he was not able to consent to the sexual conduct of Jane Roe and voiced some interest in filing his own complaint. (Doc. 101-1, ¶¶ 8–9; Doc. 106 at 13; Doc. 119 at 162:13–21, 186:2–14). Dammer told Plaintiff that filing such a complaint against Jane Roe could be considered retaliatory. (Doc. 87-1 at 142:9–19; Doc. 101-1, ¶ 9; Doc. 106 at 13; Doc. 119 at 162:24–163:1, 190:18–191:2).

After informal resolution measures failed to resolve the claim to Jane Roe's satisfaction, she asked ERAU to proceed with a formal investigation, which was opened on January 8, 2020, and Autumn Meyers-Parker was assigned to investigate Jane Roe's claim. (Doc. 101-1, ¶¶ 15–18; Doc. 106 at 9). Two days later, Plaintiff filed an incident report against Jane Roe. (Doc. 1-1 at 1; Doc. 101-1, ¶ 19; Doc. 106 at 13 n.8). On March 24, 2020, ERAU issued an Outcome Letter (Doc. 1-2) finding Plaintiff responsible for a

violation of the Civil Rights Equity & Sex / Gender Based Harassment, Discrimination, and Sexual Misconduct Policy ("**Sexual Misconduct Policy**," Doc. 1-5) and dismissing him from the University. (Doc. 1-2 at 1–3). The Outcome Letter specifically notes that it relates to "the allegations filed against [Plaintiff] by [Jane Roe]" and does not discuss, acknowledge, or provide an outcome regarding Plaintiff's claim against Jane Roe. (*Id.* at 1–4).

Plaintiff made a request for reconsideration, which was considered by Elizabeth Frost, the Title IX Coordinator at ERAU's Prescott, Arizona campus. (Doc. 101-3, ¶¶ 1–2, 12). Frost reviewed the case and determined that Plaintiff had made a threshold showing of potential bias in the handling of the claims because the investigator and decision maker relied on unverified medical records provided by Jane Roe, failed to calculate Plaintiff's blood-alcohol content, failed to follow-up on Plaintiff's claim against Jane Roe, gave inconsistent treatment of witnesses, and failed to fully investigate the levels of intoxication or incapacitation as to both parties. (*Id.* ¶ 15; Doc. 96-3 at 1–3). As a result, Frost assigned Jason Langston to conduct a reconsideration of the file. (Doc. 101-3, ¶¶ 16–17; Doc. 101-4, ¶ 14). Langston reviewed the file and paper evidence but did not engage in any further investigation of the claim. (Doc. 96-2 at 35:4–36:8). On June 10, 2020, Langston issued a letter again finding Plaintiff responsible and dismissing him from the University. (Doc. 1-4 at 1–3). The June 10, 2020 Letter only references the allegations against Plaintiff and does not mention, make findings regarding, or provide a conclusion as to Plaintiff's claim against Jane Roe. (*Id.*).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

III.    **DISCUSSION**

Plaintiff asserts two claims against ERAU: (1) selective enforcement in violation of Title IX of the Education Amendments of 1972 ("**Title IX**"), 20 U.S.C. § 1681 *et seq.*, and (2) breach of contract. (*See generally* Doc. 1). The parties have filed cross-motions for summary judgment as to both claims.

A.    **Title IX**

Count I alleges a claim for selective enforcement under Title IX. Pursuant to Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). "A selective enforcement claim asserts that a school decided to discipline a student or decided on certain penalties based on the student's gender." *Doe v. Rollins Coll.*, No. 6:18-cv-1069-Orl-37LRH, 2020 WL 8409325, at *10 (M.D. Fla. July 13, 2020) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). "Under that theory, a plaintiff challenging a university disciplinary proceeding must establish that 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'" *Whitaker v. Bd. of Regents of Univ. Sys. of Ga.*, No. 20-13618, 2021 WL 4168151, at *3 (11th Cir. Sept. 14, 2021) (quoting *Yusuf*, 35 F.3d at 715). Thus, to prevail on a selective enforcement claim the plaintiff must show: (1) a similarly situated individual of the opposite sex, (2) was treated differently by the university, and (3) there is some causal connection between the differential treatment and gender bias.

6

Plaintiff argues that Jane Roe was a similarly situated individual of the opposite sex because they both alleged that the other initiated sexual activity with an individual that they knew had consumed alcohol and both filed formal complaints of misconduct with ERAU. Conversely, ERAU attempts to argue that the two were not similarly situated because Plaintiff "was not incapacitated," "admitted to sexual misconduct," and "made numerous admissions that he consented to sex with Roe." (Doc. 101 at 17; Doc. 123 at 16). ERAU's argument, however, both misrepresents the evidence and misses the mark. As an initial matter, ERAU relies on cases addressing Title VII claims to argue that the individuals "must be similarly situated . . . in all material respects." (Doc. 101 at 16; Doc. 123 at 14). But, as the *Doe v. Rollins College* court recognized, the Title VII framework is "vastly different from Title IX." 2020 WL 8409325, at *6. Thus, Defendant has not shown that Title VII's framework or higher burden is applicable in this case.

Instead, courts have held that for purposes of Title IX claims, the plaintiff need only point to a comparator that "was in circumstances sufficiently similar to his own." *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017) (quotation omitted); *see also Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003); *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 932–33 (S.D. Iowa 2018). "For their circumstances to be considered sufficiently similar, two individuals must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the school's treatment of them for it." *Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 516 (E.D. Va. 2019) (quotation and emphasis omitted). Here, the undisputed evidence shows that Plaintiff and Jane Roe both expressed a desire not to engage in sexual activity prior to the incident, both subsequently consumed significant sums of alcohol, both initiated at

least some sexual acts with the other, and both filed formal complaints with ERAU alleging that the other had violated the Sexual Misconduct Policy. *See Rossley*, 342 F. Supp. 3d at 933 (noting that students that "both were in the position to initiate complaints of sexual misconduct" could be similarly situated if it was determined that the university dissuaded the plaintiff from filing a formal complaint); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017).

The "differentiating or mitigating circumstances" that ERAU argues exist create, at best, an issue of fact for the jury with respect to whether Jane Roe is similarly situated. First, Defendant fails to direct this Court to any record authority for the proposition that Plaintiff was not intoxicated at the time of the sexual conduct. (Doc. 101 at 17). Having reviewed the record, this Court finds no support in the evidence for this proposition as the only evidence of record supports Plaintiff's position that he was intoxicated at the time of the incident. At best, an issue of fact remains as to Plaintiff's intoxication. Second, ERAU's attempts to argue that Plaintiff's text messages amount to an admission of sexual misconduct is strained. As Plaintiff has noted, the text messages offer nothing more than an expression of remorse, which is a far cry from an admission of guilt. A reasonable jury, at the very least, could find that the text messages do not support a finding that Plaintiff admitted to misconduct. Third, to the extent that Defendant argues that Plaintiff has admitted he felt the sexual encounter was consensual, ERAU has failed to offer any evidence or argument as to why his statements are relevant. To be clear, Defendant has not directed this Court to any provision of the Sexual Misconduct Policy that requires the victim of sexual misconduct to feel or believe that the reported conduct was not consensual. Instead, the Policy unequivocally provides that a party *cannot* give consent,

regardless of their desire or intention to do so if they are mentally or physically impaired by alcohol. (Doc. 1-5 at 24). Accordingly, neither party is entitled to summary judgment on this issue.

Plaintiff also alleges that Jane Roe was treated more favorably by ERAU because she was not placed on an interim suspension from the track team following Plaintiff's complaint of sexual misconduct and ERAU failed to investigate Plaintiff's complaint. ERAU fails to dispute that it treated Plaintiff differently when it issued an interim suspension from the track team against him but failed to issue one against Jane Roe when Plaintiff requested that ERAU do so. With respect to the investigation, ERAU argues that the record establishes that it did investigate Plaintiff's complaint. In support of this contention, ERAU directs the Court to Dammer's statement that "ERAU combined the parties' incident reports into a single incident report, and Meyers-Parker investigated them as a single incident," to avoid a "duplicative formal investigation" and to promote "efficiency." (Doc. 101-1, ¶ 22). This statement is consistent with testimony given by both Dammer and Meyers-Parker at their depositions in this matter, (Doc. 101-8 at 55:1–6; Doc. 101-11 at 177:12–16), and with footnotes 8 and 19 of the Investigation Report, which provide that Plaintiff's complaint "was added to the original Incident Report on this case," and that the complaints were "combined," (Doc. 106 at 13 n.8, 24 n.19).

Nevertheless, these statements are also inconsistent with numerous pieces of evidence in this case. Specifically, the Investigation Report clearly and fully sets forth Jane Roe's allegations against Plaintiff but makes only passing references to Plaintiff's claims against Jane Roe, primarily in attempting to rebut the charge that he was dissuaded from filing a formal complaint by Dammer. Additionally, both Dammer and

Frost testified that usually if an investigation was conducted, ERAU would have generated a "full report," including "a clear statement of the allegation by the . . . complainant," and a finding of liability. (Doc. 87-1 at 46:18–47:12; Doc. 87-4 at 32:8–21, 37:10–15, 38:11–19). However, it is undisputed that the Investigation Report does not discuss Jane Roe's culpability under the Sexual Misconduct Policy and no determination letters were issued with respect to Plaintiff's complaint against Jane Roe. (*See also* Doc. 1-6 at 7–8 (noting that during a formal investigation "a Responding Party will be formally notified of an investigation in writing" and that "[w]ritten notification will be made . . . to reporting and responding parties of the outcome" of an investigation to the extent permitted by law)).

Moreover, in reviewing the file for bias, Frost specifically noted that she felt that "[t]here was no follow-up with the [Plaintiff] regarding his request for an investigation." (Doc. 87-10 at 1). In response, Meyers-Parker stated that because the complaint "could be perceived as retaliation . . . no further action was taken besides a discussion with the [Plaintiff] and his attorney." (Doc. 96-3 at 2). This is consistent with Langston's testimony that, despite reviewing the case, he was unaware of any steps taken to investigate Plaintiff's allegations against Jane Roe or if Plaintiff's complaint was investigated at all, but that "to the best of [his] knowledge . . . none of the documents [he] reviewed indicated" that any follow-up had occurred regarding Plaintiff's complaint. (Doc. 96-2 at 32:6–20, 44:24–45:6, 46:6–13). To the contrary, Langston testified that in his review of the file Dammer had "taken [Plaintiff's complaint] in and *done nothing with it*." (*Id.* at 55:5–6 (emphasis added)).[1] He also testified that he did not investigate, consider, or render an

---

[1] Langston submitted a Declaration (Doc. 101-4) in this case in which he states that the reports were combined by ERAU. (*Id.* ¶ 9). However, this statement is markedly inconsistent with his deposition testimony and, therefore, can be disregarded. *See*

opinion on Plaintiff's complaint because he "was tasked specifically to look at the case against [Plaintiff] and to make a decision in that." (*Id.* at 52:25–53:13). Accordingly, a reasonable jury could find that ERAU failed to investigate Plaintiff's complaint and material issues of fact preclude summary judgment on this issue.

Finally, the parties dispute the existence of evidence of a causal connection between any disparate treatment by ERAU and Plaintiff's gender. "Bias can be shown through evidence such as 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Doe v. Rollins Coll.*, 2020 WL 8409325, at *9 (quoting *Yusuf*, 35 F.3d at 715). Plaintiff argues that ERAU's reliance on Plaintiff's arousal, failure to question if Jane Roe obtained consent for the sexual acts with Plaintiff, and failure to conduct any investigations into female misconduct are evidence that the decision in this case was infected by gender bias. ERAU largely ignores the first two allegations, instead arguing that the last allegation cannot be an indication of gender discrimination because there is no evidence that any other male filed a similar Title IX complaint.

While the Court agrees that ERAU's failure to unilaterally investigate unreported conduct by female students is not sufficient evidence of gender bias, by itself, to allow Plaintiff's claim to proceed, *see id.* at *6, 9, the record in this case is replete with evidence from which a reasonable jury could infer that any differential treatment was the result of gender bias. Most notably, in several instances individuals from ERAU—including Dammer, Meyers-Parker, and Langston—relied on unsubstantiated and gender biased

---

*Liebman v. Metro. Life Ins. Co.*, 708 F. App'x 979, 982–83 (11th Cir. 2017). In the alternative, it, at best, creates a question as to his credibility that must be resolved at trial. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986).

assumptions that because Plaintiff became and maintained an arousal and ejaculated, he could not have been the victim of sexual misconduct or incapacitated at the time of the incident. (Doc. 1-4 at 2–3; Doc. 96-3 at 1–2; Doc. 106 at 50, 54). Assumptions that each have since acknowledged are not accurate or have been called into question by medical reports that were reviewed as a part of this investigation. (Doc. 87-1 at 62:12–19, 66:13–25, 67:9–15; Doc. 87-2 at 138:6–25; Doc. 96-2 at 45:22–46:2, 67:1–21). Additionally, Dammer, Meyers-Parker, and Langston each noted as important to their conclusion that Jane Roe expressed concerns about being "taken advantage of" and Plaintiff's failure to obtain consent for the sexual activity, but the report fails to note that Plaintiff also stated, unequivocally, that he did not want to have sex prior to the party and failed to provide any evidence that they ever asked Jane Roe if or how she obtained consent from Plaintiff. (Doc. 1-4 at 2; Doc. 87-9 at 1–2, 3; Doc. 106 at 57–58; *see also generally id.*). A reasonable jury could infer from this evidence that ERAU operated under biased gender stereotypes regarding the role of males and females in giving and obtaining consent for sex. Without belaboring the point, it is clear that this record contains sufficient evidence from which a reasonable jury could find a causal connection between ERAU's treatment of Plaintiff and his gender. *See Doe v. Univ. of Denver*, 1 F.4th 822, 831–34, 836 (10th Cir. 2021) (noting that "disturbing procedural irregularities" can establish pretext and holding that "where there is a one-sided investigation *plus* some evidence that sex may have played a role in a school's disciplinary decision, it should be up to a jury to determine whether the school's bias was based on a protected trait or merely a non-protected trait that breaks down across gender lines") (quotation omitted)). Nevertheless, as ERAU points out, a reasonable jury could also determine from the evidence that ERAU had

nondiscriminatory reasons for its actions, including that Plaintiff's claim was filed after Jane Roe's claim and, possibly, in response to her claim or that Plaintiff, although intoxicated, might not have been incapacitated at the time of the incident. *See Id.* at 836; *Doe v. Rollins Coll.*, 2020 WL 8409325, at *9 ("If anything, as noted by other courts, the inference of pro-victim bias is an obvious alternative explanation that overwhelms any potential of gender bias." (quotation omitted)); *Doe v. Syracuse Univ.*, 457 F. Supp. 3d 178, 195–96 (N.D.N.Y. 2020). Therefore, material issues of fact preclude a grant of summary judgment as to Plaintiff's Title IX claim in favor of either party.[2]

## B.     Breach of Contract

Plaintiff also alleges that ERAU breached the Sexual Misconduct Policy by investigating conduct that occurred off campus and the Civil Rights Equity & Sex/Gender-Based Harassment, Discrimination, and Sexual Misconduct Resolution Process ("**Resolution Process**," Doc. 1-6) by failing to provide him with a fair and unbiased resolution of Jane Roe's claims against him. "Under Florida law, to establish a breach of contract claim a Plaintiff must prove that '(1) a valid contract existed; (2) a material breach of the contract; and (3) damages.'" *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1157 (S.D. Fla. 2020) (quoting *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017)). Neither party disputes that a valid contract exists between the parties or that Plaintiff has shown sufficient evidence of damages. Thus, this Court will only address the issue of material breach.

---

[2] Because material issues of fact preclude summary judgment on Plaintiff's Title IX claim, ERAU's arguments regarding attorneys' fees and costs likewise fail.

First, Plaintiff argues that ERAU breached the Sexual Misconduct Policy when it investigated and punished Plaintiff for conduct that occurred off campus. Within the "Jurisdiction" section, the Sexual Misconduct Policy provides that it "extends to all activities on University owned and/or operated property[.]" (Doc. 1-5 at 5). Plaintiff argues that this clearly and unambiguously limits ERAU to conducting investigations of conduct that occurred on its campus. However, as ERAU aptly notes, the Sexual Misconduct Policy also provides that ERAU "reserves the right to act on incidents occurring on-campus *or off-campus* when the off-campus conduct could have an on-campus impact or impact on the educational mission of the University." (*Id.* at 3 (emphasis added)). Contrary to Plaintiff's assertions, there is no ambiguity or conflict between these provisions. The jurisdictional provision does not state that ERAU's jurisdiction is limited solely to conduct that occurs on campus, just that such conduct is within the jurisdiction of the university. Thus, when read together, and given their plain and ordinary meaning, the provisions of the Sexual Misconduct Policy make it clear that ERAU had the authority to punish conduct occurring both on-campus or off-campus when it could have an impact on-campus. *See Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 722 (5th Cir. 1975) ("It is elementary contract law, however, that a contract should not be construed to yield absurd results."); *Spungin v. GenSpring Fam. Offs., LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) ("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." (quoting *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 1st DCA 1989))). Because there is no dispute that the conduct in this case involved two ERAU students that were actively enrolled in

on-campus classes and members of the track team, there is no question that the conduct could have had an on-campus impact. Therefore, ERAU is entitled to summary judgment with respect to the purported breach of the Sexual Misconduct Policy.

ERAU also seeks summary judgment to the extent that Plaintiff alleges a breach of the Resolution Process. Plaintiff alleges that ERAU breached the Resolution Process by failing to provide an investigation that was "conducted in an equitable, impartial, and timely manner," was "THOROUGH, RELIABLE, AND IMPARTIAL," was "free from actual or perceived bias," and that was "fundamentally fair[.]" (Doc. 1-6 at 6–7, 16, 21). For the reasons set forth above, this Court has already determined that material issues of fact exist regarding whether the investigation was impacted by gender bias. Additionally, both Plaintiff and the counsel that represented him in the proceedings have provided statements from which a reasonable jury could conclude that ERAU officials did not treat Plaintiff in an impartial manner during and in connection with its investigation. (Doc. 4-2, ¶¶ 3–4; Doc. 112 at 91:12–22, 105:23–106:2). This is substantiated by the record in this case. For example, Jane Roe explicitly requested that Meyers-Parker not contact any witnesses on her behalf, including her suitemate because they "no longer g[o]t a long [sic]," and her request was honored. (Doc. 106 at 9, 43–45). However, when Jane Roe pointed out that Plaintiff had failed to list his roommate as a witness, Meyers-Parker independently contacted that individual for his statement. (*Id.* at 25, 45). A reasonable jury could infer this was done in an effort to avoid learning damaging information regarding Jane Roe's claim while seeking evidence to support a finding of guilt by Plaintiff, which would certainly indicate that the investigation was not impartial. Moreover, Dammer testified that because ERAU found Plaintiff responsible for misconduct, Jane Roe could

not have responsible because "if both students were both responsible for misconduct then it would not be misconduct." (Doc. 87-1 at 57:13–19, 58:1–9). This is surely evidence of, at the very least, bias in favor of the first reporting party of an incident—in this case, Jane Roe. Simply put, there is sufficient evidence in the record from which a reasonable jury could find that ERAU breached its obligations under the Resolution Process. *Doe v. Rollins Coll.*, 2020 WL 8409325, at *12.

ERAU argues, however, that even if it breached the Resolution Process, Plaintiff's failure to turn over relevant cell phone evidence when requested by the investigator constituted a material breach of the Resolution Process excusing it from further performance. "It is a fundamental principle of Florida contract law that a material breach by one party excuses the performance by the other." *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (citing *Indem. Ins. Corp. of DC. v. Caylao*, 130 So. 3d 783, 786 (Fla. 1st DCA 2014)). "Generally, whether there is a legitimate defense that excuses a breach of a contract is a question of fact." *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1380 (S.D. Fla. 2019). As an initial matter, there is record evidence that Plaintiff failed to cooperate because ERAU officials had already demonstrated bias and partiality before requesting that the evidence be turned over. (Doc. 112 at 91:2–22, 105:22–106:1, 219:21–220:1, 220:25–221:1). This raises, at least, a question of fact for the jury. Additionally, ERAU has completely failed to apprise this Court of why this breach was material under the Resolution Process or how it excused their performance. To the contrary, the Resolution Process itself appears to foreclose this argument, as it provides that a "Responding Party" that fails to cooperate or "chooses not to participate in the process" may be subject to "interim measure[s] . . . up

to and including suspension[.]" (Doc. 1-6 at 15). The Resolution Process does not, however, state that if a responding party fails to cooperate or participate ERAU may categorically act in an unfair, biased, or partial manner in conducting its investigation. Accordingly, ERAU's request for summary judgment as to Plaintiff's breach of the Resolution Process claim will be denied.

### C.    Unclean Hands

Lastly, ERAU argues that the doctrine of unclean hands precludes Plaintiff from obtaining equitable relief in this case. Specifically, ERAU argues that because there is overwhelming evidence that Plaintiff "engaged in sexual misconduct, filed a false complaint against his accuser, and dishonestly withheld evidence," he should be precluded from obtaining equitable relief.

"For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993) (citations omitted); *see also USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1273 (S.D. Fla. 2016) ("Ultimately, the affirmative defense of unclean hands requires the proponent to show that (1) the plaintiff's wrongdoing is directly related to the claim, and (2) that the defendant was personally injured by the wrongdoing." (quotation omitted)). Although ERAU cites the correct elements it must establish to avail itself of the unclean hands defense, it fails to address either element in its briefing. ERAU has not explained how Plaintiff's supposed

17

wrongdoing is directly related to its treatment of Plaintiff during the investigation or how it directly relates to his claims that he was not treated fairly and equitably by ERAU. It appears clear to this Court that ERAU is simply seeking to relitigate the merits of Jane Roe's claims, which are not at issue in this case. Had Plaintiff raised an erroneous outcome claim, then perhaps the complained of conduct would be related to his claims, but he has not and ERAU has failed to direct this Court to any argument that Plaintiff's purported wrongdoing resulted in bias or prejudice in ERAU's investigation. Furthermore, even assuming ERAU met the first prong, it has not stated how Plaintiff's purported conduct injured ERAU. Instead, ERAU states that Plaintiff's "ruse ultimately was unsuccessful." (Doc. 127 at 7). Thus, ERAU has not met its burden in establishing that it is entitled to summary judgment with respect to its defense of unclean hands. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments[.]" (citation omitted)).

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 96) is **DENIED** and Defendant's Dispositive Motion for Summary Judgment (Doc. 101) is **GRANTED in part** as set forth in this Order and **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on November 4, 2021.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record