# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOHN DOE,

     Plaintiff,

v.                                   Case No. 6:20-cv-1220-WWB-LRH

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

     Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion to Exclude Testimony of Philip Catanzano (Doc. 91) and Defendant's Response (Doc. 120); Defendant's Motion to Exclude Opinions and Expert Testimony of KC Johnson (Doc. 102) and Plaintiff's Response (Doc. 121); Defendant's Motion to Exclude Opinions and Expert Testimony of Dr. Ejaz Ahmed (Doc. 103) and Plaintiff's Response (Doc. 122); and Defendant's *Daubert* Motion to Exclude Opinions and Expert Testimony by M. Aya Gruber (Doc. 104) and Plaintiff's Response (Doc. 125).

## I. BACKGROUND

The facts of this case are fully set forth in this Court's November 4, 2021 Order (Doc. 162) on the parties' opposing motions for summary judgment. (*Id.* at 1–4).

## II. LEGAL STANDARD

Although opinion testimony is generally inadmissible, Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert

opinion testimony is admissible if: (1) "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Pursuant to *Daubert*, the determination of admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation omitted). However, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries—(1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

### III. DISCUSSION

Plaintiff moves to exclude Defendant's expert witness regarding best practices and industry standards for conducting Title IX investigations. Defendant moves to exclude three of Plaintiff's expert witnesses regarding the history of Title IX, Plaintiff's mental

health treatment, and gender stereotyping. Each expert will be addressed separately below.

### A. Philip Catanzano

In his Motion, Plaintiff seeks to exclude the testimony of Philip Catanzano, an attorney practicing in the Title IX field, because Catanzano is not qualified, is unfairly biased, has not used reliable methodology, and his testimony will not assist the trier of fact.

With respect to Catanzano's qualifications, Plaintiff appears to argue that an attorney cannot be qualified as an expert witness in a field of law in which he or she has extensive knowledge and experience. Plaintiff's argument is without merit. Catanzano worked for the United States Department of Education's Office for Civil Rights for over eight years investigating and enforcing Title IX in the educational setting. (Doc. 91-1 at 4). Subsequently, Catanzano has spent roughly six years practicing in the field of Title IX compliance and education, including participating in and presenting at a number of conferences on the topic and teaching courses on Title IX's requirements and compliance at well-respected universities. (*Id.* at 2–5). In this case, Catanzano purports to offer testimony regarding the industry standards and best practices in implementing Title IX policies and procedures, which seems well within his wheelhouse. Although Plaintiff notes that Catanzano "has never been accepted as an expert witness by any court," (Doc. 91 at 5), there is also no evidence that any court has considered his qualifications as an expert witness in the field of Title IX compliance or found him not to be qualified. This Court is satisfied that Catanzano has ample knowledge and practical experience in the field of Title IX compliance and is qualified to opine as an expert on the subject.

Plaintiff's arguments regarding bias fair no better. Specifically, Plaintiff argues that because Catanzano's legal practice is aimed at representing schools and he has only acted as an expert on behalf of schools, he is unduly biased and should not be permitted to testify. However, as Plaintiff concedes, "allegations of bias are attacks against credibility. And a witness's credibility goes to the weight of the evidence—not admissibility." *Zaccone v. Ford Motor Co.*, No. 2:15-cv-287-FtM-38CM, 2017 WL 11532918, at *1 (M.D. Fla. Apr. 17, 2017). Even if this Court could, in proper circumstances, exclude an expert because of his or her bias, Plaintiff has fallen far short of showing this Court that Catanzano has effectively become a partisan disguised as an expert. The Court notes that prior to entering private practice, Catanzano spent nearly a decade investigating schools for failing to comply with Title IX, which cuts against Plaintiff's arguments that he is unduly biased in favor of universities.

Plaintiff also argues that Catanzano's methodology is flawed because his opinion that a single investigator model is proper is contrary to the weight of authority in the industry. First, as Defendant points out, Catanzano explicitly opines that the model used by Defendant is *not* a single investigator model as that term is commonly used in the industry. (Doc. 91-1 at 15 n.5). Additionally, although Plaintiff might contest the appropriateness of the model used by Defendant in this investigation, Plaintiff has not directed this Court to any evidence that a model similar to the one used by Defendant was not widely accepted in the field of Title IX at the time that this investigation was completed. Thus, Plaintiff's arguments regarding methodology go to weight, as opposed to admissibility. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("[T]he

4

weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility.").

Lastly, Plaintiff argues that Catanzano's testimony is not relevant and will not assist the trier of fact. In this regard, the Court agrees that Defendant has not met its burden of establishing admissibility. Defendant argues that Catanzano may testify as to "the applicable industry standards and practices that applied to [its] Title IX process[.]" (Doc. 120 at 16). While the Court does not dispute that testimony regarding the applicable industry standards and practices regarding Title IX and the investigation of sexual misconduct at universities would be relevant and could assist the trier of fact, *see Roohbakhsh v. Bd. of Trs. of Neb. State Colls.*, No. 8:17CV31, 2019 WL 5653448, at *4 (D. Neb. Oct. 31, 2019); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 953 (D. Minn. 2018), Catanzano's Expert Report cannot be fairly characterized as being so limited. In fact, the Expert Report itself states that Catanzano was retained "to offer [his] expert opinion regarding the execution of ERAU's process and procedures" with regard to Jane Roe's claims against Plaintiff, (Doc. 91-1 at 6), not industry standards and best practices.

In his lengthy report, Catanzano's discussion of industry standards and best practices is virtually non-existent. To be clear, he states that Defendant's policies "Satisfied Industry Standards" and then states "there were a number of factors that [he] would analyze" in assessing the compliance of a sexual misconduct policy but fails to state what those factors are or how they relate to any standard or practice in the industry. (*Id.* at 11). The remainder of the Report appears to be a legal analysis of the requirements of Defendant's policies and procedures and facts supporting a finding that Defendant did

5

not violate their own policies and procedures, largely devoid of any discussion of industry standards or practices and more akin to a motion for summary judgment or closing argument. While Catanzano is more than welcome to seek to appear as counsel of record for Defendant in this case, this Court will not permit Defendant to attempt to offer such blatant legal argument in the guise of expert testimony. Therefore, because Defendant has only argued that Catanzano's testimony is admissible as to industry standards and practices, and Defendant has failed to direct this Court to any such opinions in his Expert Report, this Court finds that Plaintiff's Motion is due to be granted.

### B. Professor KC Johnson

Defendant seeks to exclude the testimony and opinions of Professor Robert KC Johnson, who intends to offer expert testimony regarding the history and purposes of Title IX, because he is not qualified, does not use reliable methodologies, and his opinions are not relevant and are unfairly prejudicial.

First, Defendant argues that Johnson is not qualified to testify as to gender bias, the fairness of certain procedures, or industry standards during the relevant period. Plaintiff does not dispute that Johnson is not qualified to opine on such matters, but instead argues that he is being offered as an expert on the history of Title IX, a field in which Defendant does not argue that Johnson is unqualified. This is supported by both Johnson's Expert Report (Doc. 102-1)—which is limited to a discussion of the history of Title IX and the historical facts regarding its implementation by the government and schools in campus sexual assault cases—and Johnson's testimony that his opinions are limited to "the history of Title IX and the policy developments related to Title IX" and that he is not seeking to offer any opinions regarding industry standards. (Doc. 121-1 at 49:20–

6

50:2). Contrary to Defendant's assertions, this Court sees no evidence that Johnson has strayed from his area of expertise to opine regarding industry standards or fairness. With respect to the history of Title IX, this Court is satisfied that Johnson is qualified to testify as an expert witness. *See Doe v. Rollins Coll.*, No. 6:18-cv-1069-Orl-37LRH, 2020 WL 8408417, at *4 (M.D. Fla. Jan. 7, 2020) ("Given his background, Professor Johnson's research into Title IX qualifies him to describe the history of the statute.").

Next, Defendant argues that Johnson's opinions are not reliable because they are connected to existing data only by *ipse dixit*. Specifically, Defendant takes issue with Johnson's opinion that procedural changes set forth in 2011 and 2014 guidance increased the chances that accused students would be found responsible for sexual misconduct and that schools faced pressure to follow that guidance to avoid losing federal funding. Having reviewed his Expert Report and deposition testimony, this Court is satisfied that Johnson is offering reliable opinions that are based on reasonable conclusions drawn from his review of relevant data. Defendant does not argue that Johnson failed to review existing data, that the data he reviewed is not of the type commonly relied on by historians, or that his opinions vary greatly from others in the field. To the contrary, Johnson has extensively cited historic facts, scholarly articles, and relevant documents in his Expert Report and testimony that support his opinions and conclusions. To the extent that Johnson has applied common sense, he has done so based on his specialized knowledge and expertise in the field, which does not render his opinion inadmissible. *See Zurich Am. Ins. Co. v. Hardin*, No. 1:16-cv-2312, 2018 WL 5270356, at *5–6 (N.D. Ga. Mar. 14, 2018). Any quibbles that Defendant has with his conclusions go to weight, not admissibility. *See Jones*, 861 F.2d at 663.

As to relevance, Defendant argues that testimony regarding the history of Title IX is not relevant to a selective enforcement claim. Plaintiff argues that Johnson's opinions will give the trier of fact context regarding Defendant's conduct and could explain why Defendant might have been motivated to treat Plaintiff in a biased or unfair manner. This Court agrees. Plaintiff has consistently alleged and argued that pressure from the government created an environment in which schools were more likely to conduct investigations in a biased and unfair manner. Thus, because the role that federal guidance under Title IX played in the development of adjudication systems and school responses to alleged sexual misconduct has been put squarely at issue, Johnson's testimony regarding the history, development, and implementation of such guidance will assist the trier of fact. *See Doe v. Rollins Coll.*, 2020 WL 8408417, at *4.

Defendant also argues that any opinions regarding the 2020 regulations, which did not apply to the underlying investigation in this case, are not relevant. Plaintiff has not responded to this argument and this Court fails to see any relevance regarding the 2020 regulations, which the parties agree did not apply at the time of the incident or investigation giving rise to this lawsuit. Accordingly, this Court finds that Plaintiff has not met his burden with respect to any testimony or opinions regarding the 2020 regulations and Johnson will not be permitted to testify regarding the same.

**C.    Dr. Ejaz Ahmed**

Defendant also moves to exclude the testimony of Plaintiff's treating physician, Dr. Ejaz Ahmed, to the extent he seeks to offer opinions regarding the cause of Plaintiff's mental distress. On January 5, 2021, Plaintiff disclosed Dr. Ahmed as a witness to provide testimony regarding his treatment of Plaintiff for mental health issues including Plaintiff's

diagnosis, symptoms, and treatment plans. (Doc. 113 at 1–3). Additionally, Plaintiff stated that Dr. Ahmed was "expected to testify that Plaintiff's emotional stress and well-being was triggered by the ERAU process and his legal issues." (*Id.* at 2). Defendant argues that because Plaintiff did not discuss the cause of his mental distress with Dr. Ahmed during his visits, any conclusions regarding causation constitute expert testimony for which Plaintiff was required, but failed, to provide an expert report in accordance with Federal Rule of Civil Procedure 26.

There is no dispute that Dr. Ahmed is Plaintiff's treating physician, and he was not specifically retained to offer expert opinions in this litigation. Accordingly, to the extent he seeks to offer "opinions formed and based upon observations made during the course of treatment of a patient, a Rule 26(a)(2)(B) report is not necessary." *Zalimeni v. Cooper Marine & Timberlands Corp.*, No. 1:19-00245-KD-C, 2020 WL 6533393, at *4 (S.D. Ala. Nov. 5, 2020) (quotation omitted). "However, even treating physicians may be subject to section (2)(B) if they offer opinions that extend beyond their treatment of a patient or if they form opinions upon review of information provided by an attorney or in anticipation of litigation." *Pringle v. Johnson & Johnson*, No. 13-81022-CIV, 2019 WL 6723822, at *2 (S.D. Fla. Dec. 11, 2019). Here, the record is undisputed that Plaintiff only informed Dr. Ahmed that he was seeking treatment in connection with "a recent traumatic event [that] happen[ed] that he does not want to discuss at this time." (Doc. 113 at 4, 6; *see also* Doc. 119 at 244:12–15, 250:3–8, 252:18–20, 255:8–10). Plaintiff has offered no evidence or argument that Dr. Ahmed became aware of the circumstances surrounding the "traumatic event" in the course of Plaintiff's treatment. Therefore, to the extent that he seeks to offer an opinion that Plaintiff's mental distress was triggered by the conduct of Defendant or

the disciplinary proceedings, his opinion extends beyond the scope of treatment and he was required to provide an expert report in accordance with Rule 26(a)(2)(B). Because it is undisputed that no such report was timely disclosed to Defendant, Plaintiff may not present Dr. Ahmed as an expert witness as to causation "unless the failure [to comply with Rule 26(a)] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In determining if the disclosure is harmless, the court considers the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1345 (M.D. Fla. 2019) (citation omitted). "Where the opponent of the proffered expert fails to either attempt to resolve the defective expert report in good faith or fails to move for an order requiring a more detailed response under Rule 26, that party cannot be heard to complain of prejudice." *Id.* (citations omitted).

At the outset, Defendant received the deficient disclosure on January 5, 2021, (Doc. 113 at 3), nearly two months before the close of discovery in this case. Nevertheless, Defendant has not argued that it attempted to resolve any deficiencies in good faith, and Defendant did not seek an order from this Court. Any prejudice or surprise to Defendant was of its own making and it cannot now be heard to cry foul once the time for Plaintiff to cure has long passed. Furthermore, the treatment records underlying Dr. Ahmed's testimony have been produced and the content and basis of Dr. Ahmed's causation opinions—even if not properly disclosed—is relatively easy to ascertain. The introduction of the testimony would not be disruptive to trial because Defendant does not

10

otherwise dispute Dr. Ahmed's factual knowledge relevant to this case or his ability to testify thereto. Finally, because Plaintiff argues that he does not intend to illicit causation testimony from Dr. Ahmed, his failure to provide a full report—although misguided—is understandable. Therefore, having weighed the factors, Plaintiff's failure to fully comply with Rule 26(a) was harmless, and the testimony will not be excluded pursuant to Rule 37.

In the alternative, Defendant argues that any causation testimony that Dr. Ahmed could offer would be unreliable. In this regard, Defendant largely argues that Dr. Ahmed failed to rule out other possible causes of Plaintiff's mental distress, rendering his opinion unreliable. Plaintiff argues that because Dr. Ahmed's opinion is based on his medical experience and training and his review of the facts surrounding Plaintiff's treatment, any failure to rule out other possible causes of Plaintiff's mental distress go to weight rather than admissibility.

"[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). "Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *Jones*, 861 F.2d at 662. "[W]eaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Id.* at 663. Here, the Court is satisfied that Plaintiff has shown that Dr. Ahmed's opinions regarding causation are based on his review of the relevant facts and his examination and treatment of Plaintiff, which is consistent with techniques generally accepted in the relevant medical field. Any shortcomings go to the weight of Dr. Ahmed's opinions, not

admissibility. *See Chau v. NCL (Bahamas) Ltd.*, No. 16-21115-CIV, 2017 WL 3623562, at *11 (S.D. Fla. May 3, 2017). Accordingly, Defendant's Motion will be denied.

    **D.    M. Aya Gruber**

Lastly, Defendant seeks to exclude the report and testimony of Marisa Aya Gruber and argues that she is not qualified in the area in which she seeks to offer testimony, her opinions are not reliable, and her opinions will not assist the trier of fact. Gruber seeks to opine that Defendant applied impermissible gender stereotypes and presumptions—i.e., the belief that men are always the sexual aggressors and cannot be the victims of sexual misconduct—in the underlying Title IX proceedings. (Doc. 104-1 at 2). In addition, Gruber seeks to offer testimony regarding the effects of incapacitation on male sexual performance, self-blame by rape victims, and best practices regarding the use of medical evidence in Title IX investigations. (*Id.* at 6–7, 8, 9). Gruber states that her opinions are based on her academic study and professional experience. (*Id.* at 2 n.3).

With respect to Gruber's qualifications, Defendant first argues that Gruber is not qualified to opine in this case at all because she has no practical experience regarding Title IX and her publications do not focus on Title IX or education law. Gruber is a law professor specializing in criminal law. (*Id.* at 11; Doc. 104-6 at 1). Over the last two decades, Gruber has researched and published extensively on issues regarding the role of feminism and gender stereotypes on the law with an emphasis on violence against women. (Doc. 104-1 at 11–12 & n.43; Doc. 104-6 at 2–5). While it is true that Gruber lacks significant experience in Title IX compliance and investigations, the bulk of her opinions are not related to such topics. Instead, Gruber is primarily offering opinions regarding the role that gender stereotypes and traditional sexual scripts might have,

consciously or unconsciously, on the individuals that investigated and adjudicated Plaintiff's case. While this case arises under Title IX, the majority of Gruber's opinions go to the issue of potential gender bias, which does not have any particularized or special meaning within the realm of Title IX. Accordingly, Defendant's arguments regarding Gruber's lack of experience with Title IX are largely irrelevant.

Nevertheless, to the extent that Gruber seeks to opine that Defendant's use of the SANE examination was not in accordance with best practices for Title IX investigations, (Doc. 104-1 at 9–10), this Court agrees that Plaintiff has failed to show that Gruber is qualified to offer such an opinion. Although Plaintiff argues that Gruber "has extensive experience with Title IX issues[,]" none of the relevant experience highlighted in Plaintiff's Response or Gruber's report indicate that she is an expert in best practices with respect to Title IX investigations or in reading and interpreting medical records. (Doc. 104-1 at 12; Doc. 125 at 6). Thus, Gruber's opinion that the use of the SANE examination "is not consistent with best practices" will be excluded. (Doc. 104-1 at 9). Additionally, there is no evidence that Gruber is qualified to read or interpret medical records, accordingly any opinion that seeks to interpret the SANE examination will also be excluded.

Defendant also specifically seeks the exclusion of Gruber's opinions regarding rape victim psychology and the effects of alcohol on male sexual performance or arousal because Gruber is not a psychologist, biologist, or medical practitioner. Plaintiff has failed to direct this Court to any plausible connection between the proffered opinions and Gruber's qualifications or experience, instead arguing that Defendant has failed to provide legal authority for its argument and that questions regarding the basis for Gruber's testimony should be handled by cross-examination. However, it is Plaintiff's burden to

establish that his expert is qualified in each of the areas on which she seeks to opine. Here, the record is devoid of any evidence that Gruber is an expert in the physical effects of alcohol on sexual performance or rape victim self-blame or that she has the relevant training and experience in the medical, physiological, or psychological fields to read and interpret studies regarding the same. Simply put, her ability to read and regurgitate the findings of scholarly articles and studies, without any evidence that she is also applying some level of her personal training and experience to the opinion, does not qualify her to offer expert opinions on those subjects. Accordingly, Gruber's opinions regarding the effects of incapacitation on male sexual performance and self-blame by rape victims will also be excluded.

Defendant also argues that Gruber's opinions are not based on reliable data, principles, or methods because they are based on erroneous assumptions regarding the facts of this case. However, as set forth in this Court's November 4, 2021 Order on the parties' opposing motions for summary judgment, there is factual evidence in this case to support each of Gruber's assumptions, including that Plaintiff and Jane Roe were similarly situated and that Defendant failed to investigate Plaintiff's claim against Jane Roe. (Doc. 162 at 7–11). Moreover, as set forth above, "the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Jones*, 861 F.2d at 663. To the extent that Defendant disagrees with the assumptions Gruber has based her opinions on, it is free to cross-examine her regarding the same. Having reviewed the record in this case and Gruber's opinions regarding the role gender stereotypes might have played in Defendant's decision-making process, this Court is satisfied that the remaining opinions that Gruber seeks to offer are sufficiently reliable.

With respect to relevance, Defendant argues that Gruber's opinions are not beyond the understanding of the average lay person and make impermissible legal conclusions and credibility determinations. Defendant's arguments are not well-taken. Gruber is seeking to offer testimony regarding gender stereotypes and traditional sexual norms that could consciously or unconsciously have impacted Defendant's decision-making process in the Title IX proceedings. This is an area in which expert testimony would be both relevant and helpful to the finder of fact. Contrary to Defendant's argument, none of the opinions that Gruber is permitted to offer are impermissible legal conclusions and any issues that Defendant takes with Gruber's assumptions that Plaintiff has been truthful go to weight, not admissibility.

Finally, Defendant makes the conclusory argument that Gruber should be excluded under Federal Rule of Evidence 403 because "there is too great a risk that a lay juror would place 'talismanic significance' on her *ipse dixit* testimony." (Doc. 104 at 25). Defendant's argument is nothing more than a repackaging of its *Daubert* arguments and does not provide a legal basis for exclusion.

## IV.   CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion to Exclude Testimony of Philip Catanzano (Doc. 91) is **GRANTED**.

2. Defendant's Motion to Exclude Opinions and Expert Testimony of KC Johnson (Doc. 102) is **GRANTED in part** as set forth herein and **DENIED** in all other respects.

3. Defendant's Motion to Exclude Opinions and Expert Testimony of Dr. Ejaz Ahmed (Doc. 103) is **DENIED**.

4. Defendant's Daubert Motion to Exclude Opinions and Expert Testimony by M. Aya Gruber (Doc. 104) is **GRANTED in part** as set forth herein and **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on December 6, 2021.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record